J-S67037-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| ROBERT WILLIAM KNIPPSCHILD | : | |
| | : | |
| Appellant | : | No. 1344 EDA 2017 |

Appeal from the Judgment of Sentence March 29, 2017
In the Court of Common Pleas of Delaware County
Criminal Division at No(s): CP-23-CR-0005530-2011

BEFORE: GANTMAN, P.J., MUSMANNO, J., and STEVENS*, P.J.E.

MEMORANDUM BY GANTMAN, P.J.: **FILED DECEMBER 04, 2017**

Appellant, Robert William Knippschild, appeals from the judgment of sentence entered in the Delaware County Court of Common Pleas, following the revocation of his probation. We affirm.

The relevant facts and procedural history of this case are as follows. On March 12, 2012, Appellant entered a negotiated guilty plea to one count each of possession of child pornography and criminal use of a communication facility. The court sentenced Appellant on June 20, 2012, to an aggregate term of nine (9) to twenty-three (23) months' imprisonment, plus seven (7) years' probation with special conditions, and other requirements associated with his sentence. The special conditions of Appellant's probation provided, in relevant part, as follows:

> [T]he following rules apply in addition to the standard rules
> of Adult Probation and Parole:

_____
* Former Justice specially assigned to the Superior Court.

*    *    *

> 7. [Appellant] shall not have any pornographic material of any kind in his possession at any time. … A search of his person, his personal computer, his residence, and his vehicle may be made at any time.

(Order, 6/20/12, at ¶7). Additionally, Rule 8 of Appellant's parole plan prohibited him from viewing any pornographic material. On July 5, 2012, Appellant filed a post-sentence motion, but he subsequently sought no appellate review of the judgment of sentence.

In the summer of 2014, Appellant violated the terms of his probation. On November 18, 2014, the court held a **Gagnon II**[1] hearing, revoked Appellant's probation, and resentenced him to six (6) to twelve (12) months' imprisonment, plus six (6) years' probation with special conditions. The special conditions of Appellant's probation and parole prohibited Appellant from accessing the internet and from possessing any device that can access the internet, without the approval of his parole/probation officer. Appellant filed a post-sentence motion on December 3, 2014, but he subsequently sought no appellate review of the judgment of sentence.

On September 12, 2016, Appellant again violated the terms of his probation when Appellant's parole/probation officer, John Firestone, confiscated an internet-enabled tablet during a compliance search of

---

[1] **Gagnon v. Scarpelli**, 411 U.S. 778, 93 S.Ct. 1756, 36 L.Ed.2d 656 (1973).

Appellant's residence. The tablet contained erotic literature, nude photographs, and an internet history that included visits to several pornographic websites. Appellant filed a motion on January 26, 2017, to suppress the tablet on the ground that Agent Firestone lacked reasonable suspicion to search Appellant's residence. On February 14, 2017, the court conducted a hearing on Appellant's suppression motion and heard testimony from, *inter* alia, Agent Firestone.

The revocation court accurately summarizes Agent Firestone's testimony as follows:

> 5. … [Agent Firestone] requested permission to conduct a home compliance check and search of [Appellant]'s property on September 12, 2016.
>
> 6. [Agent Firestone] based his request on the following facts: in January of 2016, during a polygraph, [Appellant] admitted that he was still masturbating to the thoughts of minors and that he viewed an erotic book at a library. [Appellant] had a prior **Gagnon II** hearing with the same violations. In addition, [Appellant] had another polygraph in June of 2016, which he failed on the question about using social media sites on the internet. Agent Firestone wanted to make sure [Appellant] was not reading any more of the erotic books or viewing pornography on the internet which are forbidden pursuant to his parole plan.
>
> \* \* \*
>
> 10. When Agent Firestone visited [Appellant] at his residence he immediately noticed [Appellant]'s demeanor. [Appellant] was in his living room, in front of his couch, and he was acting nervous. He was shaking a lot. [Appellant] was pacing back and forth in front of his couch, and when Agent Firestone was talking to him, he wouldn't make eye contact.

- 3 -

11. During the conversation, the phone rang and [Appellant] asked permission to answer it. While [Appellant] was on the phone, Agent Firestone lifted the left cushion of the couch where he found an internet enabled tablet.

12. Agent Firestone asked [Appellant] who owned the tablet and [Appellant] responded it was his. [Appellant] then provided his passcode and admitted there was pornography on the tablet.

(Order, filed March 27, 2017, at ¶¶ 5-6, 10-12) (citations to record omitted).

The court denied Appellant's suppression motion on March 27, 2017. On March 29, 2017, the court held a *Gagnon II* hearing, revoked Appellant's probation, and resentenced Appellant to twelve (12) to thirty-six (36) months' imprisonment, plus two (2) years' probation. On April 24, 2017, Appellant filed a timely notice of appeal. The court ordered Appellant on April 25, 2017, to file a concise statement of errors complained of on appeal per Pa.R.A.P. 1925(b); Appellant complied on May 15, 2017.

Appellant raises one issue for our review:

DID THE [PROBATION OFFICER] LACK REASONABLE SUSPICION TO SEARCH THE RESIDENCE OF [APPELLANT] WHICH RESULTED IN THE SEIZURE OF A TABLET CONTAINING PORNOGRAPHY WHICH WAS A VIOLATION OF HIS SUPERVISION?

(Appellant's Brief at 4).

Our standard of review of the denial of a motion to suppress evidence is as follows:

[An appellate court's] standard of review in addressing a challenge to the denial of a suppression motion is limited to determining whether the suppression court's factual

- 4 -

findings are supported by the record and whether the legal conclusions drawn from those facts are correct. Because the Commonwealth prevailed before the suppression court, we may consider only the evidence of the Commonwealth and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the suppression court's factual findings are supported by the record, [the appellate court is] bound by [those] findings and may reverse only if the court's legal conclusions are erroneous. Where…the appeal of the determination of the suppression court turns on allegations of legal error, the suppression court's legal conclusions are not binding on [the] appellate court, whose duty it is to determine if the suppression court properly applied the law to the facts. Thus, the conclusions of law of the [trial court are] subject to our plenary review.

*Commonwealth v. Hoppert*, 39 A.3d 358, 361-62 (Pa.Super. 2012), *appeal denied*, 618 Pa. 684, 57 A.3d 68 (2012).

"The Fourth Amendment of the United States Constitution and Article I, Section [8] of the Pennsylvania Constitution guarantee individuals freedom from unreasonable searches and seizures." *Commonwealth v. El*, 933 A.2d 657, 660 (Pa.Super. 2007), *aff'd*, 602 Pa. 126, 977 A.2d 1158 (2009). "A warrantless search or seizure is presumptively unreasonable under the Fourth Amendment and Article I, § 8, subject to a few specifically established, well-delineated exceptions." *Commonwealth v. McCree*, 592 Pa. 238, 247, 924 A.2d 621, 627 (2007).

The aim of probation and parole is to rehabilitate and reintegrate a lawbreaker into society as a law-abiding citizen. *Commonwealth v. Chambers*, 55 A.3d 1208, 1212 (Pa.Super. 2012). The institution of probation and parole assumes a probationer or parolee is more likely than

the ordinary citizen to violate the law. ***Commonwealth v. Moore***, 805 A.2d 616, 619 (Pa.Super. 2002). Consequently, probationers and parolees have limited Fourth Amendment rights because of a diminished expectation of privacy. ***Id.*** ***See also Chambers, supra*** (stating probationers' and parolees' Fourth Amendment constitutional rights are virtually indistinguishable). This Court explained that probation officers, like parole officers:

> [A]re in a supervisory relationship with their offenders. The purpose of this supervision is to assist the offenders in their rehabilitation and reassimilation into the community and to protect the public. Supervision practices shall reflect the balance of enforcement of the conditions of parole and case management techniques to maximize successful parole completion through effective reentry to society. As such, probationers and parolees are subject to general and individual rules of conduct and supervision described at sentencing and/or in the parole agreement.

***Commonwealth v. Smith***, 85 A.3d 530, 536 (Pa.Super. 2014) (internal citations and quotation marks omitted).

The statute governing the supervisory relationship between probation officers and probationers and the concomitant rights of the probationers, in effect at the time of the search in this case, provided in relevant part:

> **§ 9912. Supervisory relationship to offenders**
>
> **(a) General rule.**—Officers are in a supervisory relationship with their offenders. The purpose of this supervision is to assist the offenders in their rehabilitation and reassimilation into the community and to protect the public.
>
> **(b) Searches and seizures authorized.**—

(1) Officers and, where they are responsible for the supervision of county offenders, State parole agents may search the person and property of offenders in accordance with the provisions of this section.

\* \* \*

**(d)  Grounds for personal search.—**

(1)  A personal search of an offender may be conducted by an officer:

(i) if there is a reasonable suspicion to believe that the offender possesses contraband or other evidence of violations of the conditions of supervision;

\* \* \*

(2)  A property search may be conducted by an officer if there is reasonable suspicion to believe that the real or other property in the possession of or under the control of the offender contains contraband or other evidence of violations of the conditions of supervision.

\* \* \*

(6)  The existence of reasonable suspicion to search shall be determined in accordance with constitutional search and seizure provisions as applied by judicial decision.  In accordance with such case law, the following factors, where applicable, may be taken into account:

(i)  The observations of officers.

(ii)  Information provided by others.

(iii)  The activities of the offender.

(iv)  Information provided by the offender.

(v)  The experience of the officers with the offender.

(vi) The experience of officers in similar circumstances.

(vii) The prior criminal and supervisory history of the offender.

(viii) The need to verify compliance with the conditions of supervision.

\* \* \*

42 Pa.C.S.A. § 9912(a), (b)(1)(i), (d)(1)(i), (d)(2), (d)(6) (effective October 13, 2009, to September 18, 2016).[2]  **See also** 42 Pa.C.S.A. § 9913 (explaining probation officer is declared to be peace officer and shall have police powers and authority to arrest, with or without warrant, writ, rule or process, any person on probation under supervision of court for failing to report as required by terms of that person's probation, or for any other violation of that person's probation).

"Essentially, Section 9912 authorizes county probation officers to search a probationer's person or property, if there is reasonable suspicion to believe the probationer possesses contraband or other evidence of violations of the conditions of supervision."  **Chambers, supra** at 1214 (citing 42 Pa.C.S.A. § 9912(d)(1)(i), (d)(2)).  "Reasonable suspicion to search must be determined consistent with constitutional search and seizure provisions as

---

[2] The legislature amended this statute on July 20, 2016, effective in 60 days. The current version of the statute contains substantially similar language. **See** 42 Pa.C.S.A. § 9912 (amended July 20, 2016; effective September 19, 2016).

applied by judicial decisions; and in accordance with such case law, enumerated factors, where applicable, may be taken into account."

**Chambers, supra** (citing 42 Pa.C.S.A. § 9912(d)(6)).

> In establishing reasonable suspicion, the fundamental inquiry is an objective one, namely, whether the facts available to the officer at the moment of the intrusion warrant a [person] of reasonable caution in the belief that the action taken was appropriate. This assessment, like that applicable to the determination of probable cause, requires an evaluation of the totality of the circumstances, with a lesser showing needed to demonstrate reasonable suspicion in terms of both quantity or content and reliability.

**Moore, supra** at 619-20 (internal citations and quotation marks omitted). "[T]he threshold question in cases such as this is whether the probation officer had a reasonable suspicion of criminal activity or a violation of probation prior to the…search." **In re J.E.**, 907 A.2d 1114, 1119 (Pa.Super. 2006), *aff'd*, 594 Pa. 528, 937 A.2d 421 (2007) (emphasis omitted).

After a thorough review of the record, the briefs of the parties, the applicable law, and the well-reasoned opinions of the Honorable Mary Alice Brennan, we conclude Appellant's issue merits no relief. The trial court opinions comprehensively discuss and properly dispose of the question presented. (**See** Trial Court Opinion, filed, June 13, 2017, at 1-2; Order, filed March 27, 2017, at 2-4, 6-8) (finding: Agent Firestone requested permission to conduct home compliance check and search of Appellant's property on September 12, 2016, based on several factors, including: (a) Appellant had **Gagnon II** hearing with same violations in 2014; (b)

Appellant admitted during January 2016 polygraph test that he was still masturbating to thoughts of minors and had viewed erotic book at library; and (c) during June 2016 polygraph test, Appellant failed question on his use of social media websites; purpose of home compliance check was to ensure Appellant was not reading erotica or viewing pornography in violation of terms of his supervision; during September 12, 2016 home compliance check, Agent Firestone immediately observed Appellant appeared unusually agitated; Appellant paced in front of couch, shook, and failed to make eye contact with Agent Firestone, in contrast with Appellant's more relaxed demeanor on previous occasions; Appellant's criminal history and Agent Firestone's experience as probation officer led him to believe Appellant possessed pornography or prohibited form of internet access;[3] Agent Firestone had reasonable suspicion to search Appellant's couch, where he

---

[3] We are aware of the U.S. Supreme Court recent decision in *Packingham v. North Carolina*, 137 S.Ct. 1730 (decided June 19, 2017), which declared unconstitutional North Carolina's statute that completely banned sex offenders from accessing commercial social networking websites. The Court said the statute violated the First Amendment of the federal constitution because it imposed an unprecedented burden on free speech that was overly broad; and no State can enact such a complete bar to the exercise of First Amendment rights. *Id.* The Court did say, however, that a State could enact a more specific law so long as the internet restrictions are limited in context and narrowly tailored; but a state cannot enact what constitutes a complete bar to the exercise of First Amendment rights on "websites integral to the fabric of our modern society and culture." *Id.* at 1738. The *Packingham* decision does not affect the instant case, because Appellant's internet access was a tailored parole/probation restriction, subject to supervision, and based on his criminal history. As well, Appellant did not challenge Rule 8 of his parole plan or the internet access restrictions.

found Appellant's internet-enabled tablet that contained pornography). The record supports the court's decision to deny Appellant's suppression motion. Accordingly, we affirm based on the trial court's opinions.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 12/4/2017

IN THE COURT OF COMMON PLEAS OF DELAWARE COUNTY, PENNSYLVANIA
CRIMINAL DIVISION

COMMONWEALTH OF PENNSYLVANIA ::

v. :: NO. CP-23-CR-0005530-2011

::

ROBERT KNIPPSCHILD ::

Michael Galantino, Esquire, for the Commonwealth
Scott Galloway, Esquire, for Defendant

## OPINION

Brennan, J.                                                    June 12, 2017

After a Gagnon II hearing held on March 29, 2017, the Defendant was found guilty of violating his probation and thereafter re-sentenced. Defendant filed a timely Notice of Appeal and timely statement of Matters Complained of on Appeal. Matters were limited to one issue. Specifically, Defendant alleges this court erred when it did not grant his motion to suppress the search of his residence.

When reviewing the denial of a Motion to Suppress Evidence, an appellate court examines "the evidence of the Commonwealth and so much of the evidence for the defense as remains uncontradicted when read in context of the record as a whole." *Commonwealth v. Jones*, 605 Pa. 188, 988 A.2d 649, 654 (2010). The appellate court then determines "whether the suppression court's factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct." *Id.* Its review of the application of the law to the facts is plenary. *Id.*

1



On March 27, 2017, this court issued an Order denying Defendant's suppression motion which contains Findings of Fact, Conclusions of Law and a Discussion that offer a complete basis upon which the appellate courts can conduct a review. A copy of that Order is attached hereto, incorporated herein by reference and marked Exhibit "A". The Court did not err in denying Appellant's Motion to Suppress Evidence for the reasons stated in that Order.

For the foregoing reasons, the Court's Judgment of Sentence should be affirmed on appeal.

BY THE COURT:

_____
MARY ALICE BRENNAN, J.

2

IN THE COURT OF COMMON PLEAS OF DELAWARE COUNTY, PENNSYLVANIA
CRIMINAL DIVISION

COMMONWEALTH OF PENNSYLVANIA      :
                                  :
        v.                        :
                                  :   NO. CP-23-CR-0005530-2011
ROBERT KNIPPSCHILD                :
                                  :

Michael Galantino, Esquire, for the Commonwealth
Scott Galloway, Esquire, for Defendant

## ORDER DENYING DEFENDANT'S MOTION TO SUPPRESS

AND NOW, this 27th day of March, 2017, upon consideration of the Motion to

Suppress, the Suppression Hearing heard on February 14, 2017, it is hereby **ORDERED**

and **DECREED** that said Motion to Suppress is **DENIED** it appearing as follows:

### Findings of Fact

1.      Jeffrey Roney is employed by Delaware County Adult Probation and Parole

as a supervisor in the Sex Offender Unit. He has been the supervisor of the Sex Offender

Unit for five years. N.T. Suppression 2/14/2017 p. 5.

2.      As Supervisor he is familiar with procedures within his office regarding

compliance searches of parolees and probationers under supervision. The office policy is

that agents must notify him either in person or through email with a list of people they

plan on visiting to conduct the compliance checks. Agent Roney reviews that list and

authorizes the compliance checks. N.T. Suppression 2/14/2017 p. 6.

1



3.    A search consists of searching the home for any material that would be a violation of probation and parole rules and regulations. N.T. Suppression 2/14/2017 p. 9.

4.    In this case, Agent Roney approved the compliance check of the Defendant. N.T. Suppression 2/14/2017 p. 8.

5.    John Firestone is employed as a probation officer with the Delaware County Office of Adult Probation and Parole. He has been so employed for almost 13 years. He is currently assigned to the Sex Offender Unit. He requested permission to conduct a home compliance check and search of this Defendant's property on September 12, 2016. N.T. Suppression 2/14/2017 p. 10, 11.

6.    He based his request on the following facts: in January of 2016 during a polygraph, the Defendant admitted that he was still masturbating to the thoughts of minors and that he viewed an erotic book at a library. The Defendant had a prior Gagnon II hearing with the same violations. In addition, the Defendant had another polygraph in June of 2016 which he failed on the question about using social media sites on the internet. Agent Firestone wanted to make sure the Defendant was not reading any more of the erotic books or viewing pornography on the internet which are forbidden pursuant to his parole plan. N.T. Suppression 2/14/2017 p. 11, 12.

7.    Rule 8 of Defendant's parole plan prohibits him from looking at pornography of any type, whether it's a minor or an adult. N.T. Suppression 2/14/2017 p. 13.

2

8.     Rule 2 of the general rules of supervision permits Defendant's parole officer to search his residence upon the agent's request. N.T. Suppression 2/14/2017 p. 14.

9.     Commonwealth Exhibit G-4 was admitted into evidence without objection. It is a copy of the Defendant's signed parole plan. According to the plan, the Defendant is restricted from accessing the internet or possessing any device that can access the internet; internet access in Defendant's residence is not allowed until approved by treatment and/or Adult Probation and Parole; and Defendant agreed to abide by the general and sexual offenders rules and regulations. N.T. Suppression 2/14/2017 p. 14, 15.

10.     When Agent Firestone visited the Defendant at his residence he immediately noticed the Defendant's demeanor. The Defendant was in his living room, in front of his couch, and he was acting nervous. He was shaking a lot. The Defendant was pacing back and forth in front of his couch, and when Agent Firestone was talking to him, he wouldn't make eye contact. N.T. Suppression 2/14/2017 p. 17.

11.     During the conversation, the phone rang and Defendant asked permission to answer it. While the Defendant was on the phone Agent Firestone lifted the left cushion of the couch where he found an internet enabled tablet. N.T. Suppression 2/14/2017 p. 18.

12.     Agent Firestone asked the Defendant who owned the tablet and the Defendant responded it was his. The Defendant then provided his passcode and admitted there was pornography on his tablet. N.T. Suppression 2/14/2017 p. 19.

3

13. This Court finds Agent Firestone had reasonable suspicion to search Defendant's couch.

14. At that point the tablet seized and placed into evidence and the Defendant was detained for a probation violation. N.T. Suppression 2/14/2017 p. 21.

## Conclusions of Law

1. The Federal and Commonwealth Constitutions protect against unreasonable searches and seizures by law enforcement. U.S. Const., Amend IV; 2 Pa. Const., Art. I, Section 8.3 Generally, speaking, a warrantless search and seizure may not be conducted unless an exception applies. *Commonwealth v. Ballard*, 806 A.2d 889, 891 (Pa.Super. 2002) (citations omitted).

2. A parolee may be subject to a warrantless search based on reasonable suspicion if he has consented or if it is under the auspices of an existing statutory or regulatory framework. *Commonwealth v. Altadonna*, 817 A.2d 1145, 1150-1151 (Pa.Super. 2003) (citing *Commonwealth v. Williams*, 547 Pa. 577, 692 A.2d 1031 (1997)). The reason for this approach is that the concept of parole assumes a supervisee is more likely to violate the law. *Commonwealth v. Curry*, 900 A.2d 390, 394 (citing *Commonwealth v. Moore*, 805 A.2d 616, 619 (Pa.Super. 2002)). Accordingly, a parolee agrees to warrantless searches in exchange for their early release. *Curry*, 900 A.2d at 394 (citing *Commonwealth v. Appleby*, 856 A.2d 191, 195 (Pa.Super. 2004)).

4

3. The statutory authority for a county parole agent to search the person and property of a supervisee without a search warrant is codified at 42 P.S. Section 9912.

4. A suppression court must utilize the factors in 42 P.S. Section 9912 and case law to measure whether reasonable suspicion is met. However, the definition of reasonable suspicion is: " [W]hether the facts available to the officer at the moment of the [intrusion] 'warrant a man of reasonable caution in the belief' that the action taken was appropriate. This assessment, like that applicable to the determination of probable cause, requires an evaluation of the totality of the circumstances, with a lesser showing needed to demonstrate reasonable suspicion in terms of both quantity or content and reliability." *Commonwealth v. Moore*, 805 A.2d 616, 619-620 (Pa.Super. 2002) (citation and internal quotations omitted).

## Discussion

Defendant contends his parole agent lacked reasonable suspicion to search his residence. As a result, Defendant argues that all evidence seized as a result of the search, specifically the tablet containing pornography, must be suppressed as the fruit of unlawful police conduct. For the reasons that follow this Court disagrees.

42 P.S. Section 9912 (d)(2) provides; "A property search may be conducted by an officer if there is reasonable suspicion to believe that the real or other property in the possession of or under the control of the offender contains contraband or other evidence of violations of the conditions of supervision." Section 9912 (d)(6) states "The existence

5

of reasonable suspicion to search shall be determined in accordance with constitutional search and seizure provisions as applied by judicial decision. In accordance with such case law, the following factors, where applicable, may be taken into account:

(i) The observations of agents.

(ii) Information provided by others.

(iii) The activities of the offender.

(iv) Information provided by the offender.

(v) The experience of agents with the offender.

(vi) The experience of agents in similar circumstances.

(vii) The prior criminal and supervisory history of the offender.

(viii) The need to verify compliance with the conditions of supervision."

Applying the law to the facts here, it is clear that Agent Firestone's search of the Defendant's couch was supported by a reasonable suspicion. The first enumerated factor to be evaluated is the observations of the agent (42 P.S. Section 9912(d)(6)(i)). Here, evidence supporting the first factor is that when Agent Firestone visited the Defendant at his residence he immediately noticed the Defendant's demeanor. The Defendant was in his living room, he was in front of his couch, and he was acting very nervous. He was shaking a lot. The Defendant was pacing back and forth in front of his couch, and when Agent Firestone was talking to him, he wouldn't make eye contact. The other times he met with Agent Firestone the Defendant' s demeanor was more relaxed. The fifth enumerated

6

factor to be evaluated is the experience of agents with the offender (42 P.S. Section 9912(d)(6)(v)). Again, the evidence of Defendant's nervous demeanor in contrast to his more calm demeanor at prior meetings added to Agent Firestone's suspicions. The sixth enumerated factor to be evaluated is the experience of agents in similar circumstances (42 P.S. Section 9912(d)(6)(vi)). Evidence of the sixth factor is supported by the evidence of record that Agent Firestone had worked as a parole agent for 13 years. Based on that experience, Agent Firestone thought it was possible that the Defendant was in possession of pornography or a prohibited internet device. The seventh enumerated factor to be evaluated is the prior criminal and supervisory history of the offender (42 P.S. Section 9912(d)(6)(vii)). Agent Firestone testified that the Defendant's history led him to believe that he could be in violation of the terms of his parole. In January of 2016, during a polygraph, the Defendant admitted that he was still masturbating to the thoughts of minors and that he viewed an erotic book at a library. The Defendant had a prior Gagnon II hearing with the same violations. In addition, the Defendant had another polygraph in June of 2016 which he failed on the question about using social media sites on the internet. The eighth enumerated factor to be evaluated is the need to verify compliance with the conditions of supervision (42 P.S. Section 9912(d)(6)(viii)). This factor is supported by Agents Firestone's testimony that he wanted to make sure the Defendant was not reading any more of the erotic books or viewing pornography on the internet which are forbidden pursuant to his parole plan.

7

As the foregoing discussion makes clear, there were a variety of specific and articulable factors which led Agent Firestone to suspect that the Defendant was violating the conditions of his probation and conduct a search of his residence.

In evaluating these factors it is useful to note the caution of the Court in *Moore*, when it quoted:

"Reasonable suspicion is a less demanding standard than probable cause not only in the sense that reasonable suspicion can be established with information that is different in quantity or content than that required to establish probable cause, but also in the sense that reasonable suspicion can arise from information that is less reliable than that required to show probable cause."

*Moore*, 805 A.2d at 620 (quoting *Alabama v. White*, 496 U.S. 325, 330, 110 S.Ct. 2412, 2416, 110 L.Ed.2d 301, 309 (1990)).

In support of his argument the Defendant cites the recent Pennsylvania Supreme Court case of *Commonwealth v. Arter*, 151 A.3d 149 (2016). The narrow holding of that case is that the exclusionary rule derived from the state constitution applies to parole and probation revocation proceedings. It is of no benefit to Defendant is this case because we have concluded Agent Firestone had reasonable suspicion to conduct the search.

8

For the above reasons Defendant's Motion to Suppress is DENIED. Additional findings of fact and conclusions of law will be submitted in an Opinion by the Court at the appropriate time if one becomes necessary.

BY THE COURT:

MARY ALICE BRENNAN, J.

FILED
MAR 27 PM 2:01

9