**COMMONWEALTH OF PENNSYLVANIA,**
Appellee,

v.

**Frank MOORE, Appellant.**

Superior Court of Pennsylvania.

Submitted May 22, 2002.
Filed Aug. 9, 2002.

---

**618**

Kristen L. Weisenberger, Public Defender, Harrisburg, for appellant.

James P. Barker, Asst. Dist. Atty., Harrisburg, for Commonwealth, appellee.

Before: McEWEN, P.J.E., MUSMANNO and ORIE MELVIN, JJ.

MUSMANNO, J.

¶ 1 Appellant Frank Moore ("Moore") appeals from the judgment of sentence entered following his conviction of possession of a controlled substance and possession of drug paraphernalia.[1] We affirm.

---

**1.** 35 P.S. § 780–113(a)(16) and (a)(32), respectively.

**2.** One arrest resulted in a pending prosecution. The other arrest involved a probationer

¶ 2 The pertinent facts of this case are as follows. On March 14, 2001, at 7:00 p.m., Michael Potteiger ("Potteiger"), a Dauphin County Probation Supervisor who supervised Moore's Probation Officer, received a telephone call from a confidential informant. The informant communicated to Potteiger that Moore had crack cocaine on his person, and was wearing a gray top and dark blue jeans, and standing around the 1500 block of Hunter Street. *See* N.T., 8/7/01, 8–9. Potteiger was familiar with the informant because the informant had recently given reliable information to him, resulting in arrests [2] on two recent occasions.

¶ 3 Potteiger notified Probation Officers Jason Snyder ("Snyder") and Scott Woolf ("Woolf"), who were working that evening. All three officers convened at 13th and Berryhill Streets in the City of Harrisburg. *See id.* at 8. Potteiger instructed Snyder and Woolf to travel down 15th Street while Potteiger drove down Hunter Street. *Id.* at 11. Potteiger testified that the corner of 15th and Hunter is an area of high drug activity. *Id.* The informant remained in contact with Potteiger during the officers' patrol of the area. Upon locating Moore, Snyder and Woolf stopped Moore and handcuffed him. Snyder then performed a search of Moore's person that yielded $94.00 in cash and five small baggies containing suspected crack cocaine. *See id.* at 23–24.

¶ 4 Moore was charged with the aforementioned offenses. The trial court denied his Motion to suppress the evidence that was seized from him upon his arrest. After a non-jury trial, the trial court found

---

who was in possession of cocaine and is now awaiting a probation revocation hearing. *See* N.T., 8/7/01 at 7–8.

Moore guilty of all charges and sentenced him to an aggregate prison term of four (4) to twelve (12) months on the charge of possession of a controlled substance. Moore was also sentenced to pay the costs of prosecution on the charge of possession of drug paraphernalia. Thereafter, Moore filed a timely Notice of appeal.

¶ 5 Moore raises one issue on appeal: whether the trial court erred in denying his Motion to suppress, because, according to Moore, the arresting officer, Snyder, lacked the requisite reasonable suspicion to search him based solely on a confidential informant's limited description. Brief of Appellant at 12, 19. Moore argues that the Commonwealth did not present sufficient evidence to establish that the confidential informant was reliable, because although the informant's tips were used twice prior to Moore's arrest, neither of those tips had led to a conviction. Moore further claims that there was no evidence indicating how long Potteiger had known the informant, how the drugs were packaged or where the drugs were located on Moore's person. Brief of Appellant at 16. Moore also argues that the probation officers failed to corroborate the information received by the confidential informant. *Id.* at 17.

¶ 6 In reviewing a suppression court's ruling, the appellate court must ascertain whether the factual findings are supported by the record and whether the inferences and legal conclusions · drawn therefrom are reasonable. *Commonwealth v. Lewis*, 535 Pa. 501, 504, 636 A.2d 619, 621 (1994). Where the defendant challenges an adverse ruling of the suppression court, the appellate court will consider only the evidence for the prosecution and whatever evidence for the defense that remains uncontradicted in context of the whole record. *Id.* If there is support in the record, the appellate court is bound by the facts as found by the suppression court, and we may reverse that court only if the legal conclusions drawn from these facts are in error. *Commonwealth v. Brundidge*, 533 Pa. 167, 170, 620 A.2d 1115, 1116 (1993).

¶ 7 Initially, it must be remembered that "the very assumption of the institution of probation" is that the probationer "is more likely than the ordinary citizen to violate the law." *See United States v. Knights*, 534 U.S. 112, ——, 122 S.Ct. 587, 592, 151 L.Ed.2d 497, 506 (2001) (citations omitted). In that case, regarding the search of a probationer, the Court stated the following:

> Although the Fourth Amendment ordinarily requires the degree of probability embodied in the term "probable cause," a lesser degree satisfies the Constitution when the balance of governmental and private interests makes such a standard reasonable. Those interests warrant a lesser than probable cause standard here. When an officer has reasonable suspicion that a probationer subject to a search condition is engaged in criminal activity, there is enough likelihood that criminal conduct is occurring that an intrusion on the probationer's significantly diminished privacy interests is reasonable. The same circumstances that lead us to conclude that reasonable suspicion is constitutionally sufficient also render a warrant requirement unnecessary.

*Id.* at 588, 122 S.Ct. at 592–593, 151 L.Ed.2d at 506 (citations omitted).

¶ 8 In establishing reasonable suspicion, the fundamental inquiry is an objective one, namely, whether "the facts available to the officer at the moment of the [intrusion] 'warrant a man of reasonable caution in the belief' that the action taken was appropriate." *Terry v. Ohio*, 392 U.S.

1, 21, 22, 88 S.Ct. 1868, 1880, 20 L.Ed.2d 889 (1968) (citations omitted); *see also Commonwealth v. Zhahir*, 561 Pa. 545, 552, 751 A.2d 1153, 1156 (2000). "This assessment, like that applicable to the determination of probable cause, requires an evaluation of the totality of the circumstances, with a lesser showing needed to demonstrate reasonable suspicion in terms of both quantity or content and reliability." *Commonwealth v. Shine*, 784 A.2d 167, 170 (Pa.Super.2001) (citations omitted).

¶ 9 The statutory authority relating to searches by county probation and parole officers based on reasonable suspicion is derived from 61 P.S. § 331.27b(d)(1)(i). Pursuant to that statute, "a personal search of an offender may be conducted by any officer ... if there is a reasonable suspicion to believe that the offender possesses contraband or other evidence of violations of the conditions of supervision." *Id.* In addition, reasonable suspicion must be "in accord with constitutional search and seizure provisions as applied by judicial decisions." *Id.* at § 331.27b(d)(6). The policy behind 61 P.S. § 331.27b is to assist the offenders in their rehabilitation and reassimilation into the community and *to protect the public. Id.* (emphasis added). Thus, "a parolee and a probationer have limited Fourth Amendment rights because of a diminished expectation of privacy ... [T]he requirement that a parole [or probation] officer obtain a warrant based on probable cause before conducting a search does not apply." *Commonwealth v. Williams*, 547 Pa. 577, 584, 692 A.2d 1031, 1035 (1997).

¶ 10 After reviewing the evidence offered at the suppression hearing, we conclude that the trial court did not err in denying Moore's Motion to suppress. Moore's arrest was the third occasion within two weeks that demonstrated the reliability of the information supplied by this particular informant. In addition, Potteiger was kept apprised of Moore's movements during the investigation by the informant, further demonstrating the informant's reliability.

¶ 11 Moore primarily relies on *In the Interest of O.A.*, 552 Pa. 666, 677, 717 A.2d 490, 496 (1998), to support his position. In *O.A.*, a plurality of the Pennsylvania Supreme Court held that although the confidential informant had been used in the past for numerous arrests, probable cause to arrest appellant had not been established, because "there is no record of how many of these arrests resulted in convictions, nor is there any record of the identities of such prior arrestees." *Id.* at 677, 717 A.2d 490, 496. The plurality concluded that it could not "condone arrests based solely upon the bald assertions that an informant has proved reliable in the past, without any consideration of whether there is a fair probability that the person arrested actually committed or was in the process of committing a crime." *Id.* at 683, 717 A.2d at 499.

¶ 12 The appellant's status as a juvenile in *O.A.* is readily distinguishable from Moore's status as a probationer. Furthermore, in *O.A.*, our Supreme Court only addressed whether the probable cause standard had been met. *See id.* Here, the arresting officer needed only to establish the more relaxed standard of reasonable suspicion. "Reasonable suspicion is a less demanding standard than probable cause not only in the sense that reasonable suspicion can be established with information that is different in quantity or content than that required to establish probable cause, but also in the sense that reasonable suspicion can arise from information that is less reliable than that required to show probable cause." *Alabama v. White*, 496 U.S. 325, 330, 110 S.Ct. 2412, 2416, 110 L.Ed.2d 301, 309 (1990); *see also Com-*

*monwealth v. Wimbush,* 561 Pa. 368, 388, 750 A.2d 807, 818 (2000).

¶ 13 The following factors are taken into account to determine the existence of reasonable suspicion to search a probationer:

(i) The observations of officers.

(ii) Information provided by others.

(iii) The activities of the offender.

(iv) Information provided by the offender.

(v) The experience of the officers with the offender.

(vi) The experience of officers in similar circumstances.

(vii) The prior criminal and supervisory history of the offender.

(viii) The need to verify compliance with the conditions of supervision.

*See* 61 P.S. § 331.27b(d)(6). Potteiger knew the identity of the informant because he had relied on the informant in the past. *See* N.T., 8/7/01, at 8. Further, the contraband seized from Moore matched the description given by the informant.

¶ 14 Additionally, it has been shown that the confidential informant in this case was not an anonymous tipster, but an informant who had provided reliable information in the past. The experienced officers acted immediately upon receiving the information and it is shown in the record that they had made several previous arrests in the area of 15th and Hunter. *See id.* at 25. Potteiger was also familiar with Moore, who was on probation for felony aggravated assault. *Id.* at 5, 7.

¶ 15 Given that the officers acted on information supplied by a confidential informant whose reliability had been verified, reasonable suspicion had been attained. "When the underlying source of the officer's information is an anonymous call, the tip should be treated with particular suspicion." *Common-*

*wealth v. Lohr,* 715 A.2d 459, 462 (Pa.Super.1998) (citations omitted). "However, a tip from an informer known to police may carry enough indicia of reliability for the police to conduct an investigative stop, even though the same tip from an anonymous informant would likely not have done so." *Id.; see also Commonwealth v. Tate,* 237 Pa.Super. 104, 346 A.2d 570 (1975) (holding that where a reliable informant gave an officer a description of a person selling narcotics in a bar, and officers matched such description, reasonable suspicion was established, even though the officers did not observe any criminal activity). Additionally, "police officers need not personally observe the illegal or suspicious conduct which lead them to believe that criminal activity is afoot." *Commonwealth v. Wright,* 448 Pa.Super. 621, 672 A.2d 826, 830 (1996). "The police may rely on information from third parties." *Id.*

¶ 16 For the foregoing reasons, we conclude that the trial court did not err in determining that Snyder had the requisite reasonable suspicion to detain and search Moore's person, based on the belief that Moore possessed crack cocaine, thus suggesting that Moore was in violation of the conditions of his probation.

¶ 17 Accordingly, this claim fails.

¶ 18 Judgment of sentence affirmed.