J-A03020-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| LEVICK EDWARD LINTON, JR. | |
| Appellant | No. 1200 EDA 2015 |

Appeal from the Judgment of Sentence March 24, 2015
In the Court of Common Pleas of Delaware County
Criminal Division at No(s): CP-23-CR-0000593-2014

BEFORE: GANTMAN, P.J., MUNDY, J., and DUBOW, J.

MEMORANDUM BY MUNDY, J.:                    **FILED APRIL 18, 2016**

Appellant, Levick Edward Linton, Jr., appeals from the March 24, 2015 judgment of sentence of 18 to 36 months' imprisonment, imposed after he was found guilty of one count of possession with intent to deliver (PWID).[1] After careful review, we affirm.

The trial court summarized the relevant factual history of this case as follows.

> On July 9, 2013, officers of the Tinicum Township Police Department were dispatched to the area of the 700 block of Jansen Avenue in the Essington section of the township for a report of "possible illegal drug activity." Upon arriving to the area, Officer Joseph Marino observed a silver vehicle that matched the description of the vehicle provided by dispatch. Following a directive by his

---

[1] 35 P.S. § 780-113(a)(30).

commanding officer, Sergeant James Simpkins, Jr., Officer Marino effectuated a stop of the observed vehicle. After Officer Marino made the stop, Sergeant Simpkins arrived and spoke to the driver of the vehicle. The driver, [] Appellant [], provided the officers with a Pennsylvania identification card and told the officers that he was coming "from" Wawa, a convenience store in the area.

The officers ran [] Appellant's name through PennDOT and confirmed that his driver's license was suspended, DUI related. The officers also had trouble believing [] Appellant's assertion that he had just been at the Wawa store because the store was located ahead of the direction that Appellant had been driving. Sergeant Simpkins asked [] Appellant if he could search his vehicle, and [] Appellant said yes. Nothing was recovered from the vehicle during the search, and [] Appellant was then told that he was free to leave and that he would be issued a citation in the mail. He was also advised that his vehicle would be towed from the scene.

The following day, July 10, 2013, the Tinicum Township Police Department received a telephone call from Lieutenant [Gibney[2]] of the neighboring Darby Borough Police Department, who advised that he had received information from a reliable source that the vehicle that had been involved in the stop the previous day contained narcotics. On July 11, 2013, based upon on this information, a canine search was conducted of the exterior of the vehicle. The canine indicated the presence of drugs. Based on this and the information supplied by Lieutenant [Gibney], a search warrant was prepared. On July 12, 2013, at 3:15 p.m. Magisterial District Judge Horace Davis approved and signed the search warrant. With said warrant, a thorough search of

---

[2] The Commonwealth informs us that the suppression hearing transcript erroneously refers to the Lieutenant's name as "Givney." Commonwealth's Brief at 25 n.4.

- 2 -

the vehicle was done and Sergeant Simpkins discovered a yellow cloth bag filled with 34 clear Ziploc bags each containing a blue glassine bag stamped "Dream House" which contained white powder. Also recovered was a clear plastic Ziploc bag containing 140 clear plastic Ziploc bags each containing a blue glassine bag stamped "Dream House" which also contained white power. Two letters and other documents addressed to [] Appellant, and four cellular telephones were also found in the vehicle. The substances were submitted to the Lima Regional Laboratory for testing, and the bags were analyzed and confirmed to contain heroin.

Trial Court Opinion, 7/17/15, at 1-2.

On February 12, 2014, the Commonwealth filed an information, charging Appellant with one count each of PWID, intentional possession of a controlled substance, possession of drug paraphernalia, driving with a suspended license, and driving without a license.[3] At some point, Appellant filed a motion to suppress, on which the trial court conducted a hearing on July 24, 2014.[4] On October 20, 2014, the suppression court entered an order denying Appellant's suppression motion. Appellant proceeded to a stipulated bench trial on February 26, 2015, at the conclusion of which Appellant was found guilty of one count of PWID. The remaining charges

_____

[3] 35 P.S. §§ 780-113(a)(30), 780-113(a)(16), 780-113(a)(32), 75 Pa.C.S.A. §§ 1543(b)(1), and 1501(a), respectively.

[4] Although a copy of the motion is contained within the certified record, it is neither file-stamped nor docketed. Nevertheless, as the same issues contained therein were litigated at the suppression hearing, we do not consider this an impediment to our review.

were withdrawn. On March 24, 2015, the trial court sentenced Appellant to 18 to 36 months' imprisonment. Appellant did not file a post-sentence motion. On April 16, 2015, Appellant filed a timely notice of appeal.[5]

On appeal, Appellant raises the following issues for our review.

> [I.] Whether the trial court erred in denying Appellant's suppression [m]otion to [s]uppress when [] Appellant was stopped and seized by the Tinicum Township Police Department without reasonable suspicion?
>
> [II.] Did the trial court err in denying Appellant's suppression [m]otion to [s]uppress on the grounds that [Section] 6309.2(a)(1) of the [Motor] Vehicle Code that the vehicle was towed "in the interest of public safety" when no risk to the public or public safety was presented by the vehicle parked legally on the street?
>
> [III.] Did the trial court err in denying Appellant's suppression [m]otion to [s]uppress on the grounds that Appellant lacked a privacy interest in the vehicle, as it belonged to Appellant's mother?
>
> [IV.] Did the trial court err in denying Appellant's suppression [m]otion to [s]uppress by relying on the independent source doctrine, as the independent source did not mention the specific vehicle searched, and the police were illegally in possession of the vehicle at the time of the search?

Appellant's Brief at 4.

---

[5] Appellant and the trial court have complied with Pennsylvania Rule of Appellate Procedure 1925.

As noted above, all of Appellant's issues pertain to the denial of his suppression motion. We begin by noting our well-settled standard of review.

> In addressing a challenge to a trial court's denial of a suppression motion, we are limited to determining whether the factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. Since the Commonwealth prevailed in the suppression court, we may consider only the evidence of the Commonwealth and so much of the evidence for the defense as it remains uncontradicted when read in the context of the record as a whole. Where the record supports the factual findings of the trial court, we are bound by those facts and may reverse only if the legal conclusions drawn therefrom are in error.

*Commonwealth v. Scarborough*, 89 A.3d 679, 683 (Pa. Super. 2014) (citation omitted), *appeal denied*, 102 A.3d 985 (Pa. 2014). In addition, our scope of review is confined to the suppression court record. *In re L.J.*, 79 A.3d 1073, 1080 (Pa. 2013).

In his first issue, Appellant avers that the police lacked reasonable suspicion to initially stop him inside the vehicle in question. Appellant's Brief at 8-22. The Commonwealth counters that the police did have reasonable suspicion based on the tip provided through dispatch. Commonwealth's Brief at 16.

> The Fourth Amendment of the Federal Constitution provides, "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated …." U.S. Const. amend. IV. Likewise, Article I, Section 8 of the Pennsylvania Constitution

> states, "[t]he people shall be secure in their persons, houses, papers and possessions from unreasonable searches and seizures …." Pa. Const. Art. I, § 8.
>
> ***Commonwealth v. Carter***, 105 A.3d 765, 768 (Pa. Super. 2014) (*en banc*), *appeal denied*, 117 A.3d 295 (Pa. 2015).

***Commonwealth v. Williams***, 125 A.3d 425, 432 (Pa. Super. 2015). Our cases have recognized three levels of police-citizen interactions.

> The first is a mere encounter, which requires no level of suspicion at all. ***Commonwealth v. Daniel***, 999 A.2d 590, 596 (Pa. Super. 2010). The second level is an investigative detention, which must be supported by reasonable suspicion. ***Id.*** at 596-597. Finally, the third level is an arrest or custodial detention, which must be supported by probable cause. ***Id.*** at 597.

***Commonwealth v. Walls***, 53 A.3d 889, 892-893 (Pa. Super. 2012). Instantly, the parties agree that this was investigative detention for which reasonable suspicion was required. Appellant's Brief at 8; Commonwealth's Brief at 12, 16.

> It is axiomatic that to establish reasonable suspicion, an officer "must be able to articulate something more than an inchoate and unparticularized suspicion or hunch." ***United States v. Sokolow***, 490 U.S. 1, 7 (1989) (internal quotation marks and citation omitted). … A suppression court is required to "take[] into account the totality of the circumstances—the whole picture." ***Navarette***, ***supra*** (internal quotation marks and citation omitted). When conducting a ***Terry*** analysis, it is incumbent on the suppression court to inquire, based on all of the circumstances known to the officer *ex*

- 6 -

> *ante*, whether an objective basis for the seizure was present. ***Adams v. Williams***, 407 U.S. 143, 146 (1972).

***Carter***, ***supra*** at 768-769.

***Williams***, ***supra***. In addition, relevant to this appeal, the Supreme Court has explained the constitutional distinction between tips from known police informants and anonymous tips in the following manner.

> Unlike a tip from a known informant whose reputation can be assessed and who can be held responsible if her allegations turn out to be fabricated, … an anonymous tip alone seldom demonstrates the informant's basis of knowledge or veracity[.] As we have recognized, however, there are situations in which an anonymous tip, suitably corroborated, exhibits sufficient indicia of reliability to provide reasonable suspicion to make the investigatory stop.

***Florida v. J.L.***, 529 U.S. 266, 270 (2000) (internal quotation marks and citations omitted); ***see also Commonwealth v. Moore***, 805 A.2d 616, 621 (Pa. Super. 2002) (stating, "a tip from an informer known to police may carry enough indicia of reliability for the police to conduct an investigative stop, even though the same tip from an anonymous informant would likely not have done so[]") (citations omitted).

In this case, Sergeant Simpkins testified that on July 9, 2013 he received a radio dispatch based on a tip from a known 911 caller. N.T., 7/24/14, at 35, 39. Specifically, Sergeant Simpkins testified that this was a citizen known to him for over 20 years, and that he knew said citizen to be truthful and law-abiding. ***Id.*** at 39-40. The dispatch information revealed

- 7 -

there was a silver vehicle involved in illegal "drug activity in the rear alley of the 700 block of Jansen Avenue in Essington." *Id.* at 35. Specifically, the tipster indicated that a silver vehicle was involved. *Id.* Within one minute of receiving the information, Sergeant Simpkins went to the area around 700 block of Jansen Avenue. *Id.* at 40. Sergeant Simpkins observed a silver vehicle upon making a right-hand turn onto to the 600 block of Jansen Avenue, traveling in the direction away from the 700 block. *Id.* at 41. Sergeant Simpkins radioed to Officer Marino to stop the vehicle. *Id.* at 42. Sergeant Simpkins identified the driver of the silver vehicle as Appellant. *Id.* at 43-44.

After careful review of the certified record, we conclude Appellant's issue lacks merit. As noted above, the police responded based on a known informant's tip apprising them of drug activity involving a silver car at a specific block of a specific street. Upon arriving at said area one minute later, Sergeant Simpkins observed a silver vehicle driving away from the block specified in the informant's tip. Based on these considerations, we conclude the police had reasonable suspicion and Appellant's Fourth Amendment rights were not violated in this regard. *See*, *e.g.*, *Adams v. Williams*, 407 U.S. 143, 146 (1972) (concluding that information from an informant that "an individual seated in a nearby vehicle was carrying narcotics and had a gun at his waist" who was "known to [the officer]

personally and had provided him with information in the past" established reasonable suspicion).

Appellant next avers that the trial court erred when it concluded that the police had the authority to tow the vehicle, under Section 6309.2 of the Motor Vehicle Code, which requires a 24-hour waiting period before a car may be towed under certain circumstances. Appellant's Brief at 23-24; *see also generally* 75 Pa.C.S.A. § 6309.2. The Commonwealth counters that the tow was proper under the section because it was admittedly left parked in a resident only parking zone. Commonwealth's Brief at 22. Our review of the pertinent statutes of the Motor Vehicle Code support the Commonwealth's position.

Our cases have stated that "[t]he right for the police to tow a car is derived from 75 Pa.C.S. § 3352." *Commonwealth v. Bailey*, 986 A.2d 860, 862 (Pa. Super. 2009), *appeal denied*, 995 A.2d 350 (Pa. 2010). Relevant to his case, Section 3352(c) states that "[a]ny police officer may remove or cause to be removed to the place of business of the operator of a wrecker or to a nearby garage or other place of safety any vehicle found upon a highway" if certain conditions apply. *Id.* § 3352(c). One of those conditions is where "[t]he vehicle is in violation of section 3353[.]" *Id.* § 3352(c)(4). Section 3353(a)(3)(ii) prohibits parking a vehicle in any place "where official signs prohibit parking." 75 Pa.C.S.A. § 3353(a)(3)(ii).

In this case, Sergeant Simpkins testified that the vehicle in question was parked in a residents only zone.

> Q.    Okay.  The place that it was parked, is it a legal parking spot?
>
> A.    You have -- it's resident parking only.
>
> Q.    Okay.  And for residents parking is there -- is that something that they get a tag from the township?
>
> A.    They have to get a tag on the back of their car.
>
> Q.    Okay.  Did the vehicle driven by [Appellant] have that tag?
>
> A.    No.

N.T., 7/24/14, at 54.  In addition, Sergeant Simpkins testified that tickets are issued for violations of the residential parking restrictions.  *Id.* at 78-79. Therefore, it is apparent that Appellant's car was parked in a zone that an "official sign" from the township designated as requiring a residential permit on the car, which this vehicle did not possess.  Therefore, the vehicle was in violation of Section 3353(a)(3)(ii), and the police were permitted to tow the vehicle under Section 3352(c)(4).  ***See, e.g.***, ***Commonwealth v. Hennigan***, 753 A.2d 245, 259 (Pa. Super. 2000) (stating that a "car [that] was … parked on a public street [was parked on] a 'highway' for purposes of the Vehicle Code").  As a result, the trial court did not err when it concluded

that the police lawfully towed the vehicle.[6] Because there was no legal impediment to the tow, we consequently reject Appellant's argument that the police were not lawfully present at the car when the canine sniff occurred.[7] ***See generally*** Appellant's Brief at 28.

Based on the foregoing, we conclude Appellant's issues on appeal are devoid of merit. Accordingly, the trial court's March 24, 2015 judgment of sentence is affirmed.

Judgment of sentence affirmed.

Judgment Entered.

_Joseph D. Seletyn_

Joseph D. Seletyn, Esq.
Prothonotary

Date: 4/18/2016

---

[6] We note that as an appellate court, we "may affirm [the lower court] for any reason, including such reasons not considered by the lower court." ***Commonwealth v. Clemens***, 66 A.3d 373, 381 n.6 (Pa. Super. 2013) (citation omitted).

[7] In light of our conclusions that the traffic stop, tow, and canine sniff were constitutional on the merits and the fact that Appellant does not challenge the subsequent search warrant as lacking probable cause, we need not address Appellant's remaining issues on appeal.