J-S14028-23

2023 PA Super 133

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
:
v. :
:
:
:
CLINTON REED KUHLMAN :
:
Appellant : No. 1063 WDA 2022

Appeal from the Judgment of Sentence Entered August 22, 2022
In the Court of Common Pleas of Beaver County Criminal Division at
No(s):  CP-04-CR-0000160-2021

BEFORE:   PANELLA, P.J., BENDER, P.J.E., and PELLEGRINI, J.[*]

OPINION BY BENDER, P.J.E.:                    **FILED: July 27, 2023**

Appellant, Clinton Reed Kuhlman, appeals *pro se* from the aggregate, mandatory judgment of sentence of 25 to 50 years' incarceration, imposed after he was convicted, following a non-jury trial, of 58 counts of possession of child pornography, 18 Pa.C.S. § 6312(d), and one count of criminal use of a communication facility, 18 Pa.C.S. § 7512(a).  After careful review, we affirm.

The facts and procedural history of this case stem from another case in which Appellant was convicted, in 2015, of five counts of sexual abuse of children (dissemination of photographs, videotapes, computer depictions and films), 18 Pa.C.S. § 6312(c), ten counts of sexual abuse of children (child pornography), 18 Pa.C.S. § 6312(d), and one count of criminal use of a communication facility.  For these convictions, Appellant was sentenced to an

---

[*] Retired Senior Judge assigned to the Superior Court.

aggregate term of incarceration of one year less one day to two years less one day, followed by ten years' probation.

In 2016, Appellant was released and began serving his term of probation. Shortly after his release, Probation Officer Chris Sturgeon ("P.O. Sturgeon") met with Appellant to review the written rules of his supervision, which included the following:

> 1. You must successfully enroll in and complete a [c]ourt[-]approved sexual offender treatment/counseling program. During the course of your therapy, you must complete any and all assessments or evaluations required by your treatment provider which may include a polygraph examination. You will comply with all conditions and recommendations of your treatment provider. You will pay all fees associated with the treatment program.
>
> 6. You will not own, possess, or view any photographs, magazines, movies, websites, e-mails, D.V.D.[]s or videotapes depicting nude or partially nude men, women, or children. You will not access any sexually explicit telephone services. I understand that Beaver County Adult Probation Department has the authority to search and seize any materials that exist on my person, place, residence and/or vehicle without warrant if there is reasonable suspicion that these types of materials exist.
>
> 8. Access to the Internet is limited to legitimate and business purposes only. You will submit to a search of your computer or any computer that you have access to for any violations throughout your supervision. Your computer may be seized for the purpose of this search and if any information on your computer violates the Laws of the Commonwealth of Pennsylvania, the search may cease, and the proper law enforcement agencies will be notified.
>
> 9. You may be subjected to and agree to Remote Internet Monitoring. You will pay all fees associated with this program.

Commonwealth's Brief at 8-9.

In 2020, a sexual-offender evaluation of Appellant was completed by Julia Lindemuth, who is an approved therapist for sexual offenders by the Sexual Offender Assessment Board.[1]

> On February 13, 2020, … Lindemuth emailed P.O. Sturgeon expressing concern that [Appellant] had unmonitored access to the internet and could potentially be viewing child pornography. In her email, Lindemuth advised P.O. Sturgeon that [Appellant] was cooperative, but minimized his responsibility and continued to claim that he did not know viewing child pornography was illegal. She further advised the probation officer that unmonitored internet access was potentially problematic for an online offender. [] Lindemuth told P.O. Sturgeon that Lindemuth is also employed as an evaluator by the Sexual Offender Board, a position that requires her to use her expertise to determine whether a defendant meets the criteria of a violent sexual offender.
>
> [Appellant] had told her he could not access the internet due to his illness. He also reported that he did not use the internet but would assist his mother on the computer. Furthermore, the therapist recommended [that] the probation officer … do a home visit and take a look at the computer history of [Appellant].
>
> After receiving this information, P.O. Sturgeon obtained permission from the head of Beaver County Adult Probation, Don Neill, to do a field visit of [Appellant's] residence in order to follow up on the concerns of the therapist. On February 18, 2020, P.O. Sturgeon went to [Appellant's] residence at 813 Coleman Drive at 10:30 a.m. where he lived with his elderly mother. Present was fellow probation officer Ian Thomas and the Chief of Police of Rochester Township. After several minutes[,] [Appellant] answered the door. P.O. Sturgeon explained that she was there to look at [Appellant's] computers to see if he was currently viewing any form of pornography. [Appellant] was cooperative, consented to the field visit, and provided P.O. Sturgeon access to his Android phone and the locations of the two computers inside his residence.

_____

[1] Appellant's evaluation was delayed due to the fact that he had extensive brain surgery to remove a tumor. *See* Commonwealth's Brief at 9.

[Appellant's] residence had a main floor, containing a kitchen, living room, and a couple of sitting areas, as well as a partially finished basement. The first computer was located on the main floor of the residence and, after review, [P.O.] Sturgeon testified that there was nothing inappropriate on that computer.

When [P.O.] Sturgeon asked [Appellant] where his bedroom was, [Appellant] led her downstairs to a partially finished basement. The basement was partitioned, with the left-hand[]side containing [Appellant's] bedroom and the right-hand[]side containing a utilities area. The second computer was located in an area of [Appellant's] bedroom. When the probation officers examined the computer, they immediately began to see "pornography and child sex abuse images" on the computer. Upon viewing the images, P.O. Sturgeon testified that the probation officers immediately stopped the search and contacted their supervisor to advise them of the potential violation of [Appellant's] rules of supervision. [Appellant] was detained for violation of his supervision rules.

Subsequently, the Pennsylvania State Police obtained a search warrant to search [Appellant's] computer. The forensic examination of that computer revealed 58 photographs of child pornography on [Appellant's] computer.

*Id.* at 10-12 (citations to the reproduced record omitted).

Appellant was subsequently charged with 58 counts of possession of child pornography and one count of criminal use of a communication facility. On August 12, 2021, he filed a pretrial motion to suppress, arguing that the evidence supporting his charges was the product of an illegal search and seizure because P.O. Sturgeon lacked reasonable suspicion that his computer contained contraband. On April 5, 2022, the trial court conducted a suppression hearing. On April 26, 2022, the court issued an order and opinion denying Appellant's suppression motion. The case proceeded to a non-jury trial, at the close of which Appellant was convicted of all charges. He was sentenced on August 22, 2022, to the aggregate term set forth *supra*.

- 4 -

On September 14, 2022, Appellant, who at the time was represented by counsel, filed the instant, *pro se* appeal challenging his judgment of sentence. On September 21, 2022, counsel for Appellant filed a second appeal, docketed at 1109 WDA 2022, challenging the same judgment of sentence at the same trial court docket.[2] As the appeals appeared duplicative, this Court, on November 1, 2022, entered a Rule to Show Cause Order at the instant appeal directing *pro se* Appellant to show cause why this appeal should not be dismissed as duplicative to the appeal at 1109 WDA 2022.

On November 10, 2022, Appellant filed an application requesting that the appeal at 1109 WDA 2022 be dismissed. Appellant explained he had requested counsel withdraw immediately after sentencing, but that counsel had failed to do so and instead filed the appeal at 1109 WDA 2022. Because of this, Appellant requested the unwanted appeal at 1109 WDA 2022 be dismissed as duplicative. Therefore, on November 18, 2022, this Court entered an order dismissing the appeal at 1109 WDA 2022 as duplicative to the instant appeal.

After Appellant filed his notice of appeal, the trial court directed him to file a Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal and he timely complied. The trial court filed a Rule 1925(a) opinion, indicating

---

[2] We note that counsel was permitted to withdraw by this Court, at 1109 WDA 2022, on November 10, 2022, following an October 25, 2022 trial court order which permitted counsel to withdraw following a hearing pursuant to *Commonwealth v. Grazier*, 713 A.2d 81 (Pa. 1998).

that it was relying on its April 26, 2022 suppression opinion to address Appellant's claims.

Herein, Appellant states three issues for our review:

1. Whether the trial court err[ed in denying the suppression motion (evidence seized from [Appellant's] computer) as [P.O.] … Sturgeon did not have a reasonable suspicion that the computer contained contraband or that [Appellant] violated the conditions of his supervision in violation of 42 Pa.C.S.[] §[]9912(d)(2), Pennsylvania Const. Art. 1[]§[]8 and/or U.S. Const. Amend. 4?

2. Whether the Commonwealth committed [p]rosecutorial [m]isconduct during the suppressi[on] hearing and violate[d Appellant's] 14th [A]mendment rights to due process[ w]hen [it] presented, used or should have known the testimony from [P.O.] … Sturgeon, pursuant to Julia Lindemuth, was false[?]

3. Whether the trial court err[ed] by relying on [P.O.] … Sturgeon['s] perjuried [*sic*] and false testimony to deny the suppression motion[,n]amely, the testimony surrounding Julia Lindemuth[?]

Appellant's Brief at 2.

In Appellant's first issue, he contends that the trial court erred by denying his motion to suppress.

An appellate court's standard of review in addressing a challenge to the denial of a suppression motion is limited to determining whether the suppression court's factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. Because the Commonwealth prevailed before the suppression court, we may consider only the evidence of the Commonwealth and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the suppression court's factual findings are supported by the record, the appellate court is bound by those findings and may reverse only if the court's legal conclusions are erroneous. Where the appeal of the determination of the suppression court turns on allegations of legal error, the suppression court's legal conclusions are not binding on an

appellate court, whose duty it is to determine if the suppression court properly applied the law to the facts. Thus, the conclusions of law of the courts below are subject to plenary review.

*Commonwealth v. Smith*, 164 A.3d 1255, 1257 (Pa. Super. 2017) (cleaned up).

Instantly, Appellant contends that the evidence of child pornography recovered from his computer should have been suppressed because P.O. Sturgeon lacked reasonable suspicion to search the computer. According to Appellant, the sole basis for the search was Lindemuth's email, which he claims used only vague and uncertain language that showed a "mere suspicion, not reasonable suspicion." Appellant's Brief at 14. He argues that, unlike other cases where we found reasonable suspicion to search a parolee/probationer, here, there was no "specific and articulable facts based off of … personal knowledge and observations of criminal activity and probation violations" to show that P.O. Sturgeon had reasonable suspicion to search his computer. *See id.* at 15-16 (citing *Commonwealth v. Banks*, 249 A.3d 1146 (Pa. Super. 2021) (unpublished memorandum) (concluding that reasonable suspicion existed to search Banks, who had committed parole violations on other occasions, based on a call from his cousin informing Banks' parole officer that Banks was selling narcotics out of his home, that he had firearms, and there were known gang members going in and out of his

residence);[3] ***Commonwealth v. Moore***, 805 A.2d 616 (Pa. Super. 2002) (finding that a probation officer had reasonable suspicion to stop and search Moore after receiving a tip from a known, reliable informant that Moore had crack cocaine on his person and was located in an area of high drug activity, and the officer observed Moore in that location)). Appellant insists that, unlike in ***Banks*** or ***Moore***, here, "Lindemuth[']s email did not specify or articulate facts of criminal activity or probation violations to establish reasonable suspicion." Appellant's Brief at 16. Therefore, he contends that the court should have granted his motion to suppress the evidence found on his computer.

In rejecting Appellant's suppression argument, the trial court reasoned as follows:

> The aim of probation and parole is to rehabilitate and reintegrate a lawbreaker into society as a law-abiding citizen. ***Commonwealth v. Chambers***, 55 A.3d 1208, 1212 (Pa. Super. 2012). The institution of probation and parole assumes a probationer or parolee is more likely than the ordinary citizen to violate the law. ***Commonwealth v. Moore***, 805 A.2d 616, 619 (Pa. Super. 2002). Consequently, probationers and parolees have limited Fourth Amendment rights because of a diminished expectation of privacy. ***Id. See also Chambers***, ***supra*** (stating probationers' and parolees' Fourth Amendment constitutional rights are virtually indistinguishable). The Superior Court explained that probation officers, like parole officers[,]
>
> > [a]re in a supervisory relationship with their offenders. The purpose of this supervision is to assist the offenders in their

_____

[3] Pursuant to Pennsylvania Rule of Appellate Procedure 126, unpublished, non-precedential memorandum decisions of the Superior Court filed after May 1, 2019, may be cited for their persuasive value. Pa.R.A.P. 126(b).

rehabilitation and reassimilation into the community and to protect the public. Supervision practices shall reflect the balance of enforcement of the conditions of parole and case management techniques to maximize successful parole completion through effective reentry to society. As such, probationers and parolees are subject to general and individual rules of conduct and supervision described at sentencing and/or in the parole agreement.

***Commonwealth v. Smith***, 85 A.3d 530, 536 (Pa. Super. 2014). ***See also Commonwealth v. Cruz-Rivera***, 249 A.3d 1125 (Pa. Super. 2021).

The statute governing the supervisory relationship between probation officers and probationers and the rights of the probationers, in effect at the time of the search in this case, provided in relevant part:

42 Pa.C.S.[]§[]9912, the statute governing probationers, states in pertinent part:

(a) General rule.-- Officers are in a supervisory relationship with their offenders. The purpose of this supervision is to assist the offenders in their rehabilitation and reassimilation into the community and to protect the public.

(b) Searches and seizures authorized. --

(1) Officers and, where they are responsible for the supervision of county offenders, State parole agents may search the person and property of offenders in accordance with the provisions of this section.[]

***

(2)(iii) Nothing in this section shall be construed to permit searches and seizures in violation of the Constitution of the United States or section 8 of Article I of the Constitution of Pennsylvania.[]

***

(d)(2) A property search may be conducted by an officer if there is reasonable suspicion to believe that the real or other property in the possession of or under the control of the

offender contains contraband or other evidence of violations of the conditions of supervision.[]

***

(d)(6) The existence of reasonable suspicion to search shall be determined in accordance with constitutional search and seizure provisions as applied by judicial decision. In accordance with such case law, the following factors, where applicable, may be taken into account:

(i) The observations of officers.

(ii) Information provided by others.

(iii) The activities of the offender.

(iv) Information provided by the offender.

(v) The experience of the officers with the offender.

(vi) The experience of officers in similar circumstances.

(vii) The prior criminal and supervisory history of the offender.

(viii) The need to verify compliance with the conditions of supervision.

In **Commonwealth v. Wilson**, 67 A.3d 736 (Pa. 2013), the Supreme Court explained:

Section 9912(d)(2) is a specific provision addressing a narrow circumstance: the conditions under which a county probation officer may conduct a warrantless search, including a requirement that the probation officer must possess reasonable suspicion that the property contains contraband or other evidence of violations of the probationer's terms of probation. The provision is clear and unambiguous and lists no exception. The reason for the restrictions … are obvious: searches implicate constitutional rights (even though the Fourth Amendment rights of probationers are diminished).

[**Id.** at 744.]

\*\*\*

"The policy behind [Section 9912] is to assist the offenders in their rehabilitation and reassimilation into the community and to protect the public." ***Moore***, ***supra*** at 620 (emphasis [omitted]). "Essentially, Section 9912 authorizes county probation officers to search a probationer's person or property, if there is reasonable suspicion to believe the probationer possesses contraband or other evidence of violations of the conditions of supervision." ***Chambers***, ***supra*** at 1214[] (citing 42 Pa.C.S.[ §] 9912(d)(1)(i), (d)(2)). "Reasonable suspicion to search must be determined consistent with constitutional search and seizure provisions as applied by judicial decisions; and in accordance with such case law, enumerated factors, where applicable, may be taken into account." [***Id.***] (citing 42 Pa.C.S.[ §] 9912(d)(6)).

In establishing reasonable suspicion, the fundamental inquiry is an objective one, namely, whether the facts available to the officer at the moment of the intrusion warrant a [person] of reasonable caution in the belief that the action taken was appropriate. This assessment, like that applicable to the determination of probable cause, requires an evaluation of the totality of the circumstances, with a lesser showing needed to demonstrate reasonable suspicion in terms of both quantity or content and reliability. ***Moore***, ***supra*** at 619-20[] (internal citations and quotation marks omitted).

"[T]he threshold question in cases such as this is whether the probation officer had a reasonable suspicion of criminal activity or a violation of probation prior to the … search." ***In re J.E.***, 907 A.2d 1114, 1119 (Pa. Super. 2006). Accordingly, the fact that a probationer signs a consent form permitting warrantless searches as a term of his probation is insufficient to permit a search absent reasonable suspicion of wrongdoing. ***Id.*** at 1120. Rather, the probationer's signature acts as acknowledgment that the probation officer "has a right to conduct reasonable searches of [the probationer's] residence listed on the [probation] agreement without a warrant." ***Commonwealth v. [] Williams***, [692 A.2d 1031, 1036] … ([Pa.] 1997).

The [c]ourt finds in light of the totality of the circumstances that P.O. Sturgeon had reasonable suspicion regarding whether [Appellant] was using the internet for non-legitimate business purposes and whether he was in possession of child pornography as prohibited under the Rules for Sexual Offenders. In this case,

- 11 -

P.O. Sturgeon was supervising [Appellant] with knowledge that he had been convicted of [five] counts of distribution of child pornography, [ten] counts of possession of child pornography, and [one] count of criminal communications facility.

The [c]ourt also finds critical that … Lindenmuth--the board-certified therapist for [Appellant's] sexual offender treatment--evaluated [Appellant] for sexual offender treatment in light of her clinical judgement and experience. Based upon this expert evaluation, … Lindemuth was concerned that [Appellant] had unmonitored access to a computer. … Lindemuth was further concerned that [Appellant] continued to minimize his responsibility for distribution and possession of child pornography by continuing to state that he did not know that it was illegal to view child pornography. [Appellant's] evasive explanations, viewed in the light of … Lindenmuth's professional experience, reasonably put the therapist on notice that [Appellant] could be the violating the rules of supervision. These red flags resulted in … Lindemuth['s] emailing P.O. Sturgeon, expressing her concerns[,] and recommending that inspection of [Appellant's] computers be conducted to determine whether he was in compliance with the sex offender rules of Beaver County Probation. The same day [P.O.] Sturgeon received the email, she received authorization from [the Head of Adult Probation,] Don Neill[,] to do the home inspection.

The [c]ourt further notes, in assessing the totality of the circumstances, that when P.O. Sturgeon went to [Appellant's] residence, [Appellant] answered the door and was informed by the probation officer why she was there. She explained specifically why she wanted to inspect his home, and [Appellant] gave full permission to allow her to enter his residence. The [c]ourt further notes that it was [Appellant], rather than anyone else, who informed the probation officer that there was one computer upstairs and a second computer in his basement bedroom.

The [c]ourt also notes the limited basis of the search. When the probation officers went downstairs to [Appellant's] bedroom, and they initially saw the pornographic images which were apparent from their face, they immediately stopped the search and contacted their supervisor, who then contacted the Pennsylvania state police.

> Finally, the [c]ourt finds persuasive that the search warrant is otherwise uncontested by both the Commonwealth and the [d]efense. Considering this evidence in light of the totality of the circumstances, the [c]ourt concludes that there was reasonable suspicion to conduct the warrantless search.

Trial Court Opinion, 4/26/22, at 7-11.

We agree with the trial court that P.O. Sturgeon had reasonable suspicion to search Appellant's computer based on the totality of the circumstances known to her. Namely, Appellant was serving probation for committing crimes of possessing and disseminating child pornography using the internet. Lindemuth notified P.O. Sturgeon that she felt Appellant was minimizing his responsibility for those crimes and being evasive, which raised 'red flags' for her when she discovered that Appellant had unmonitored internet access. Appellant's probation conditions expressly permitted P.O. Sturgeon to conduct a warrantless search of Appellant's person and residence, and Appellant consented to P.O. Sturgeon's entry into his home. Further, Appellant informed P.O. Sturgeon where his two computers were located after she explained to him why she was there. The totality of these circumstances show that P.O. Sturgeon possessed reasonable suspicion that contraband or evidence of a probation violation would be found on Appellant's computer, and that her search thereof was within the bounds of her authority as Appellant's probation officer. **See Commonwealth v. Sperber**, 177 A.3d 212 (Pa. Super. 2017) (finding a parole officer had reasonable suspicion to search Sperber's person, car, and phone where police had an anonymous tip and reports from other parolees that Sperber had a smart phone and was

accessing social media; Sperber had been previously convicted of child-pornography offenses; Sperber's conditions of parole provided for warrantless searches of his person and property; and Sperber voluntarily consented to the search). Thus, Appellant's first issue is meritless.

In Appellant's next issue, he claims that the Commonwealth committed prosecutorial misconduct and "violated his due process rights by presenting P.O. Sturgeon['s] perjured testimony at the [s]uppression hearing and trial...." Appellant's Brief at 21-22. According to Appellant, in February of 2021, he was found to be in violation of his probationary term by "refusing and fail[ing] to complete the sexual offender program ordered by the" trial court, yet at the suppression hearing in this case, P.O. Sturgeon "testified that [Appellant] was compliant with the program." *Id.* at 25-26. Appellant claims that P.O. Sturgeon's suppression-hearing testimony was patently false, given the evidence that she knew he had previously been found to be in violation of his probationary term. Because the Commonwealth introduced this ostensibly perjured testimony, Appellant claims that it committed prosecutorial misconduct.

Relatedly, Appellant contends in his third issue on appeal, that this alleged fabrication by P.O. Sturgeon should have caused the trial court to reject her suppression-hearing testimony as incredible. Because P.O. Sturgeon's testimony was the only evidence to support the legality of the search of his computer, Appellant claims that the court erred by denying his motion to suppress.

Appellant's arguments are waived. He does not cite to where he objected to P.O. Sturgeon's at-issue, suppression-hearing testimony, and/or raised his prosecutorial-misconduct claim before the trial court. *See* Pa.R.A.P. 302(a) ("Issues not raised in the lower court are waived and cannot be raised for the first time on appeal."). Moreover, Appellant cannot now argue that the trial court erred in relying on P.O. Sturgeon's testimony in denying his motion to suppress where no objection to that evidence was lodged. Accordingly, Appellant's second and third issues are waived and/or meritless.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 7/27/2023

- 15 -