J-S08026-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| MARIO RAMON TORO COTTE | : | |
| | : | |
| Appellant | : | No. 705 MDA 2023 |

Appeal from the Judgment of Sentence Entered April 10, 2023
In the Court of Common Pleas of York County Criminal Division at No(s):
CP-67-CR-0000934-2022

BEFORE:   OLSON, J., MURRAY, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY MURRAY, J.:                    **FILED: MARCH 21, 2024**

Mario Ramon Toro Cotte (Appellant) appeals from the judgment of sentence imposed after his non-jury convictions of one count each of possession with intent to deliver a controlled substance, possession of a small amount of marijuana, unauthorized use of an automobile, general lighting requirements, and driving while operating privileges suspended – DUI related.[1]  We affirm.

On December 7, 2021, Pennsylvania State Troopers conducted a traffic stop of a minivan operated by Appellant.  During the stop, the troopers seized fentanyl and marijuana.  The Commonwealth subsequently charged Appellant

_____

[*] Former Justice specially assigned to the Superior Court.

[1] 35 P.S. §§ 780-113(a)(30), 780-113(a)(31)(ii); 18 Pa.C.S.A. § 3928(a); 75 Pa.C.S.A. §§ 4303(b), 1543(b)(1)(iii).

with the above-described offenses. On April 7, 2022, Appellant filed a pretrial motion to suppress the evidence seized during the traffic stop. On May 16, 2022, and July 8, 2022, the suppression court held hearings on the motion.

The suppression court thereafter rendered the following findings:

[The charges] resulted from a traffic stop conducted by Pennsylvania State Troopers Dylan Adams and Ryan Wildermuth on December 7, 2021, at approximately 11:46 p.m. in Craley, York County, Pennsylvania.

Trooper Adams observed [Appellant] driving a green Chevy Uplander with an inoperable registration plate lamp. Trooper Adams testified that he followed [Appellant] and turned off his own headlights to verify that [Appellant's] registration plate light was not working. Trooper Adams initiated his lights and siren and conducted a traffic stop. Upon approaching [Appellant], Trooper Adams smelled the odor of marijuana and alcohol emanating from the vehicle. [Appellant] was unable to produce a valid driver's license and admitted to the Trooper that his license was suspended – DUI related. Trooper Adams later confirmed this fact by reviewing [Appellant's] certified driving record from his patrol vehicle.

[Appellant] requested to exit the vehicle and check the registration plate light. Trooper Adams agreed but inquired whether [Appellant] had any weapons on his person. [Appellant] pulled up his shirt and Trooper [Adams] immediately noticed a bulge in [Appellant's] coat pocket. Upon inquiry to [Appellant], [Appellant] responded that it was a bag of candy. [Appellant] removed the bag from his pocket and turned to place it in [Appellant's] vehicle. For safety purposes, Trooper Adams asked to see the bag and [Appellant] handed the bag to Trooper Adams. Trooper Adams testified that[,] based on his training and experience[,] he immediately felt bundled glassine bags in the plastic bag and suspected that the bag contained heroin. Trooper Adams opened the black bag and indeed found multiple bags of the suspected contraband.

Trooper Adams then placed [Appellant] under arrest and provided **Miranda**[2] warnings to [Appellant]. Trooper Adams then applied for a search warrant for [Appellant's] vehicle, which was authorized. Upon execution of the search warrant[, five vials containing marijuana were] discovered in the vehicle.

Suppression Court Opinion, 7/26/22, at 2-4 (citation and footnotes omitted; footnote added).

On July 26, 2022, the suppression court denied Appellant's suppression motion. The suppression court determined that Appellant's evasiveness, in response to Trooper Adams's initial inquiry about the bag, provided reasonable suspicion to support the trooper's investigatory detention. **Id.** at 6, 8. The suppression court also deemed discovery of the contraband inevitable because Appellant admitted his license was suspended and thus could not have been permitted to drive away from the scene. **Id.** at 6.

Following a stipulated bench trial, the trial court convicted Appellant of the above offenses. On April 10, 2023, the trial court imposed an aggregate sentence of 7 to 14 years in prison.

Appellant filed a timely notice of appeal. Appellant and the trial court have complied with Pa.R.A.P. 1925.

Appellant presents the following issue for our review:

Did the lower court err in denying [Appellant's] suppression motion where, without a warrant, the trooper seized and searched a bag [Appellant] was carrying because: 1) the trooper lacked reasonable and articulable suspicion that the bag contained a weapon or that [Appellant] was armed and dangerous; 2)

---

[2] **Miranda v. Arizona**, 384 U.S. 436 (1966).

[Appellant] merely submitted to a show of authority in handing the trooper the bag as opposed to consenting; and 3) the Commonwealth failed to prove the bag would have been inevitably discovered?

Appellant's Brief at 4.

Appellant asserts Trooper Adams lacked reasonable suspicion to inquire about the bag. *See id.* at 16-21. He argues that the ostensible purpose of the inquiry was to ensure officer safety, but Trooper Adams lacked any articulable safety-related grounds to inspect the bag. *Id.* Appellant argues his allegedly "evasive" behavior did not escalate the encounter, but rather deescalated it. *Id.* at 20. He asserts that any safety concern regarding the bag's contents "evaporated when [Appellant] sought to place the bag in the minivan" and "thus remove it from the situation." *Id.* Appellant also maintains his action of handing the bag to the trooper was not consensual, but rather was coerced. *Id.* at 21-25. He further argues the Commonwealth failed to establish that the contraband would have been inevitably discovered. *Id.* at 25-31.

Our standard of review

in addressing a challenge to the denial of a suppression motion is limited to determining whether the suppression court's factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. Because the Commonwealth prevailed before the suppression court, we may consider only the evidence of the Commonwealth and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the suppression court's factual findings are supported by the record, the appellate court is bound by those findings and may reverse only if the court's legal conclusions are erroneous. Where the appeal of the

- 4 -

determination of the suppression court turns on allegations of legal error, the suppression court's legal conclusions are not binding on an appellate court, whose duty it is to determine if the suppression court properly applied the law to the facts. Thus, the conclusions of law of the courts below are subject to plenary review.

*Commonwealth v. Kuhlman*, 300 A.3d 460, 464 (Pa. Super. 2023) (citation omitted).

"The Fourth Amendment to the United States Constitution, incorporated to states by and through the Fourteenth Amendment to the United States Constitution, and Article I, Section 8 of the Pennsylvania Constitution, protect citizens from 'unreasonable searches and seizures.'" *Commonwealth v. Barnes*, 296 A.3d 52, 56 (Pa. Super. 2023). This Court has explained:

> The law recognizes three distinct levels of interactions between police officers and citizens: (1) a mere encounter; (2) an investigative detention, often described as a *Terry* stop, *see Terry v. Ohio*, 392 U.S. 1 (1968); and (3) a custodial detention.
>
> A mere encounter can be any formal or informal interaction between an officer and a citizen, but will normally be an inquiry by the officer of a citizen. The hallmark of this interaction is that it carries no official compulsion to stop or respond and therefore need not be justified by any level of police suspicion.
>
> In contrast, an investigative detention carries an official compulsion to stop and respond. Since this interaction has elements of official compulsion it requires reasonable suspicion of unlawful activity.
>
> Finally, a custodial detention occurs when the nature, duration and conditions of an investigative detention become so coercive as to be, practically speaking, the functional equivalent of an arrest. This level of interaction requires that the police have probable cause to believe that the person so detained has committed or is committing a crime.

***Commonwealth v. Jefferson***, 256 A.3d 1242, 1247-48 (Pa. Super. 2021)

(*en banc*) (citations, quotation marks, and ellipses omitted).

Regarding a ***Terry*** stop:

[T]he question of whether reasonable suspicion existed at the time of an investigatory detention must be answered by examining the totality of the circumstances to determine whether there was a particularized and objective basis for suspecting the individual stopped of criminal activity. These circumstances are to be viewed through the eyes of a trained officer.

In making this determination, we must give due weight ... to the specific reasonable inferences the police officer is entitled to draw from the facts in light of his experience. Also, the totality of the circumstances test does not limit our inquiry to an examination of only those facts that clearly indicate criminal conduct. Rather, even a combination of innocent facts, when taken together, may warrant further investigation by the police officer.

***Barnes***, 296 A.3d at 57 (citations omitted).

This Court has explained that

an officer may pat-down an individual whose suspicious behavior he is investigating on the basis of a reasonable belief that the individual is presently armed and dangerous to the officer or others. To validate a ***Terry*** frisk, the police officer must be able to articulate specific facts from which he reasonably inferred that the individual was armed and dangerous. In determining whether a ***Terry*** frisk was supported by a sufficient articulable basis, we examine the totality of the circumstances.

***Commonwealth v. Cunningham***, 287 A.3d 1, 10 (Pa. Super. 2022) (citation

and quotation marks omitted).

"The purpose of a ***Terry*** frisk is to allow an officer to continue an

investigation without fearing for the safety of the officer or others nearby."

***Id.*** at 11. To justify a ***Terry*** frisk, "[t]he officer need not be absolutely certain

that the individual is armed; the issue is whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or the safety of others was in danger." *Id.* (citation and quotation marks omitted). "Review of an officer's decision to frisk for weapons requires balancing two legitimate interests: that of the citizen to be free from unreasonable searches and seizures; and that of the officer to be secure in his personal safety and to prevent harm to others." *Commonwealth v. Zhahir*, 751 A.2d 1153, 1158 (Pa. 2000) (citing *Dunaway v. New York*, 442 U.S. 200 (1979)).

This Court has observed that "roadside encounters between police and suspects are especially hazardous, and that danger may arise from the possible presence of weapons in the area surrounding a suspect." *In re O.J.*, 958 A.2d 561, 564 (Pa. Super. 2008) (*en banc*) (quoting *Michigan v. Long*, 463 U.S. 1032, 1049 (1983)).

> We have recognized that **when an officer detains a vehicle for violation of a traffic law, it is inherently reasonable that he or she be concerned with safety** and, as a result, may order the occupants of the vehicle to alight from the car. **Allowing police officers to control all movement in a traffic encounter is a reasonable and justifiable step towards protecting their safety**.

*Commonwealth v. Wright*, 224 A.3d 1104, 1109 (Pa. Super. 2019) (emphasis added; citations, quotation marks, ellipses, and brackets omitted).

"Evasive behavior" is relevant in determining whether there is reasonable suspicion justifying an investigatory detention. *Commonwealth v. Foglia*, 979 A.2d 357, 360 (Pa. Super. 2009) (citing *Illinois v. Wardlow*,

528 U.S. 119 (2000)); *accord In re D.M.*, 781 A.2d 1161, 1164 (Pa. 2001) ("nervous, evasive behavior is a pertinent factor in determining reasonable suspicion"). A defendant's furtive or evasive movements may "escalate[ an] encounter into one of reasonable suspicion." *Commonwealth v. Scarborough*, 89 A.3d 679, 684 (Pa. Super. 2014); *see also Commonwealth v. Hall*, 713 A.2d 650, 653 (Pa. Super. 1998), *rev'd on other grounds*, 771 A.2d 1232 (Pa. 2001) (*Terry* frisk justified where defendant's refusal to comply with officer's request to remove his hand from his pocket "escalated [a mere encounter] into a situation where the totality of circumstances involved a reasonable suspicion and justified a detention to stop and frisk."); *Commonwealth v. Thomas*, 179 A.3d 77, 83-84 (Pa. Super. 2018) (defendant's "refusal to comply with [officer's] request to remove his hands from his pockets justified the frisk of his person for the protection of the officers," and "[i]t was reasonable for [the officer] to infer that [the defendant] may have been armed and dangerous, given his refusal to show his hands and his evasive movements").

Here, the suppression court found that Trooper Adams inquired whether Appellant had any weapons in response to Appellant's own request to exit the vehicle. Suppression Court Opinion, 7/26/22, 5-6. Appellant responded that he had no weapons and lifted his shirt to show his waistband. N.T., 5/16/22, at 27. At that point, Trooper Adams saw a bulge in Appellant's jacket pocket. *Id.* Trooper Adams testified that Appellant "gripped [the bulge] when it was

- 8 -

in his pocket and when he lifted his shirt up he gripped it to lift it up." *Id.* at 13. Trooper Adams testified, "I just wanted to know for my safety what that [bulge] is, whether it be a gun or a weapon or something that could hurt me." *Id.* at 14. The suppression court found that when Trooper Adams saw the bulge in Appellant's jacket pocket, he was alerted to a legitimate safety concern. Suppression Court Opinion, 7/26/22, at 6. Trooper Adams asked Appellant what the bulge was, and Appellant said it was candy. N.T., 5/16/22, at 27-28. Trooper Adams asked if he could see it and, ignoring the request, Appellant removed the bag from his pocket and attempted to put it in the vehicle. *Id.* at 28. Trooper Adams asked again if he could see it, and Appellant handed him the bag. *Id.*

The suppression court found that Appellant's actions after Trooper Adams first asked about the bulge were "evasive" and provided Trooper Adams with justification to insist on inspecting the bag. Suppression Court Opinion, 7/26/22, at 6, 8. The suppression court implicitly treats Trooper Adams's second request to see the bag, which resulted in Appellant handing it over, as the functional equivalent of a *Terry* frisk of the bag. *Id.* at 8.[3] Appellant argues his attempt to put the bag in the vehicle and "thus remove

---

[3] Appellant concedes the encounter did not become coercive until the second time Trooper Adams asked to see the bag. *See* Appellant's Reply Brief at 5. Trooper Adams's second request to see the bag immediately followed Appellant's "evasive" actions. *See* N.T., 5/16/22, at 27-28; Suppression Court Opinion, 7/26/24, at 6.

it from the situation" dispelled any safety concern. Appellant's Brief at 20. However, the suppression court's contrary interpretation of Appellant's actions (as heightening rather than dispelling concern) is supported by the record, and we are bound by its factual findings.[4]

Our review discloses that the suppression court's factual findings are supported by the record, and its application of the law to the facts was proper. *See Commonwealth v. Morris*, 619 A.2d 709, 712 (Pa. Super. 1992) (defendant's "furtive movements in stuffing a brown bag under the front passenger seat of the vehicle" justified *Terry* frisk of defendant and search of vehicle's passenger compartment); *Commonwealth v. Mathis*, 173 A.3d 699, 713-14 (Pa. 2017) (*Terry* frisk justified in part by officer's observation of defendant angling himself to conceal a jacket containing a prominent bulge). We discern no error in the suppression court's conclusion that, under

---

[4] Appellant fails to explain how, if he were able to place the bag in the vehicle, it would not still be accessible by him. *See Commonwealth v. Tuggles*, 58 A.3d 840, 842 (Pa. Super. 2012) (under *Terry*, "a weapons search may be performed where an officer has reasonable suspicion that a firearm may be secreted in [a vehicle] and … the search may encompass any area where a weapon could be hidden and accessible to the defendant in the vehicle.").

the totality of the circumstances, Trooper Adams reasonable suspicion to inspect the bag.[5, 6] Appellant's issue merits no relief.

In light of our disposition, we need not address Appellant's remaining arguments regarding whether his action of handing over the bag was consensual or whether the contraband would have been inevitably discovered.

_____

[5] The suppression court also found the fact that the "traffic stop occurred near midnight in a rural area of York County" to be a factor heightening the officer's concern for safety. Suppression Court Opinion, 7/26/22, at 7. This factor has long been recognized as contributing to the totality of the circumstances justifying a protective search. **See In re O.J.**, 958 A.2d at 566 (protective search justified in part because "[t]he vehicular stop occurred at night, which creates a heightened danger that an officer will not be able to view a suspect reaching for a weapon."); **Commonwealth v. Rosa**, 734 A.2d 412, 416 (Pa. Super. 1999) (protective search justified in part because defendant "was stopped at night in a rural area"); **Long**, 463 U.S. at 1050 (protective search justified in part because "[t]he hour was late and the area rural.").

[6] Trooper Adams testified that as soon as he had the bag in his hand, he "felt what felt like glassine packets, bundles of heroin," and he "immediately knew what it was." N.T., 5/16/22 at 14. The suppression court found this testimony credible. Suppression Court Opinion, 7/26/22, at 8. Appellant does not dispute that, once Trooper Adams had the bag in his hand, he could seize it under the plain feel doctrine. Appellant's Reply Brief at 1; **see Int. of T.W.**, 261 A.3d 409, 425 (Pa. 2021) (during a **Terry** frisk, if an officer determines an object "is not a weapon, the officer may only remove the object if it is immediately apparent by touch the object is illegal contraband.").

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 3/21/2024