J-A18016-17

2017 PA Super 391

COMMONWEALTH OF PENNSYLVANIA  :   IN THE SUPERIOR COURT OF
                             :            PENNSYLVANIA
                             :
        v.                   :
                             :
                             :
                             :
THOMAS EDWARD SPERBER, JR.    :
                             :
        Appellant            :   No. 707 WDA 2016

Appeal from the Judgment of Sentence April 14, 2016
In the Court of Common Pleas of Allegheny County Criminal Division at
No(s):  CP-02-CR-0002947-2015

BEFORE:  BOWES, J., LAZARUS, J., and OTT, J.

CONCURRING OPINION BY BOWES, J.:          **FILED  DECEMBER 12, 2017**

I concur.  However, I would affirm on the basis that Appellant
consented to the search of his vehicle, which resulted in the seizure of a
smartphone.  Next, I would hold that the warrantless search of Appellant's
phone was lawful.  Finally, I would deem waived any claim respecting the
voluntariness of the consent.

I begin with Appellant's suppression motion, which asserted that the
"search of [Appellant] and his vehicle was unlawful because an
uncorroborated anonymous tip cannot, on its own, form the basis for
reasonable suspicion."  Motion to Suppress, 8/21/15, at unnumbered 3.
Appellant alleged that "The warrantless seizure and search of [Appellant]
and his vehicle was unlawful because it was unsupported by reasonable
suspicion."  *Id*. at unnumbered 4.  The motion additionally argued that the
subsequent search, arrest, and search warrant for the phone were fruits of

the tainted search and seizure. The body of the motion cited

**Commonwealth v. Colon**, 31 A.3d 309 (Pa.Super. 2011);

**Commonwealth v. Kue**, 692 A.2d 1076 (Pa. 1997) (OAJC); and

**Commonwealth v. Wimbush**, 750 A.2d 807 (Pa. 2000) in support.

Appellant did not claim that his consent was involuntary.

Those cases and their attendant principles are inapplicable to the matter at hand with respect to the initial search of Appellant's vehicle and consequent seizure of Appellant's smartphone. **Colon** involved the search of a parolee that was not the product of consent. **Kue** and **Wimbush** both involved whether an anonymous tip was sufficiently reliable to support an investigative detention. Therefore, those cases would be relevant to our analysis only if Agent Wolfe had engaged in a nonconsensual warrantless search of Appellant's vehicle or his person, based on the anonymous tips plus any other factor or information.[1] At that juncture, we would assess, as

---

[1] Appellant presumably proceeded with suppression on that ground due to the fact that the affidavit of probable cause does not discuss the circumstances of the search. It reads, in pertinent part:

> On August 27, 2014, Agent Wolfe was made aware of an anonymous communication received by Pennsylvania State Police Megan's Law concerning the Actor. The anonymous source claimed that the Actor had Internet access and multiple social media accounts.

> On this same date (8/27/2014), the Actor reported to the PA State Parole's Pittsburgh district office for routine reporting. During a search of the Actor's vehicle, an LG MS232 Optimus

*(Footnote Continued Next Page)*

the Majority does, whether the vehicular search was justified.[2] However, since the record supports a finding that the search of Appellant's vehicle, which resulted in the seizure of the smartphone, was consensual, I would uphold the vehicular search on that basis.

_(Footnote Continued)_ ————————————

> L70 Titan cellular phone (hereinafter referred to as "the Actor's phone") was confiscated. Agent Wolfe noted that several social networking applications appeared to be installed on the Actor's phone. Please note that based on state supervision, the Actor did not have permission to possess a phone with Internet capabilities.

Affidavit of Probable Cause at 3.

[2] My distinguished colleagues find that the anonymous tip was sufficiently reliable to support the vehicular search. I am not convinced that their analysis is correct. First, the record does not indicate whether the multiple tips came from different sources, nor does it indicate whether such tips were consistently delivered over a particular period of time. In any event, accepting _arguendo_ that the anonymous tips were reliable, the tips revealed only that Appellant had a smartphone, not that the vehicle he drove to the meeting contained said smartphone. Perhaps that assumption was reasonable; perhaps not. However, when Appellant disclosed the contents of his pockets, Appellant possessed a basic cellphone that did not appear to possess Internet capabilities. Therefore, the anonymous tipsters' information was arguably discredited, not corroborated.

Since the Majority fails to connect the reliability of the tip regarding possession of a phone with the search of the car, the Majority implies that the tips would permit Agent Wolfe to search Appellant's home, person, car, or any other possession in an effort to find the smartphone. Since parolees have diminished Fourth Amendment rights, it may be that a search of the vehicle Appellant used was reasonable. However, given the utter lack of information regarding the anonymous information, to say nothing of how to apply anonymous tipster principles in the context of a parolee search, we need go no further than affirming the search based on consent.

I recognize that the consensual search herein occurred during a scheduled, *i.e.* presumably mandatory, probation meeting. That fact does not automatically render voluntary consent impossible. ***Commonwealth v. Strickler***, 757 A.2d 884 (Pa. 2000), a consensual search case, demonstrates the applicable principles. Therein, a police officer encountered a vehicle parked on the side of the road. He approached the occupants, who stated they had stopped to urinate. The officer asked to see their licenses, conducted a license check, advised them not to urinate on someone else's property, and thanked Strickler, the driver, for his cooperation. *Id*. at 886. The officer took a few steps toward his vehicle, but then turned around and asked Strickler "if he wouldn't mind if I took a look through [the] car." *Id*. at 887. Strickler hesitated but agreed, and the search yielded drug paraphernalia. The question was whether Strickler validly consented to the search following the investigative detention. *Id*. at 888. Significantly, the opinion concluded with an observation regarding the determination of whether a seizure had occurred versus whether consent was voluntary.

> Since both the tests for voluntariness and for a seizure centrally entail an examination of the objective circumstances surrounding the police/citizen encounter to determine whether there was a show of authority that would impact upon a reasonable citizen-subject's perspective, there is a substantial, necessary overlap in the analyses. The reasons supporting the conclusion that Strickler was not seized at the time that he lent his consent to the vehicle search therefore also militate strongly in favor of a determination that his consent was voluntary.

*Id*. at 901–02.

- 4 -

Herein, Appellant alleges that "the interaction between [Appellant] and Wolfe, his parole supervisor, is properly characterized as an investigative detention." Appellant's brief at 19. Appellant then asserts that this investigative detention was not supported by the anonymous tips. As stated in **Strickler**, whether Appellant was seized overlaps to a great extent with the question of whether his consent was voluntary. The record is unclear as to the circumstances of Appellant's interactions with Agent Wolfe, and we therefore lack the basis to say whether Appellant's consent was procured during a seizure. The lack of an evidentiary record on these issues is chargeable to Appellant, as the issue of involuntary consent was raised for the first time in his post-hearing brief as an alternative argument.

> In the alternative, should it be determined that Mr. Sperber consented to the search of his person and property, that consent was invalid. The totality of the circumstances indicate that the consent was lacking the crucial element of voluntariness. The consent was invalid and the warrantless search of Mr. Sperber's vehicle remains unlawful.

Post-Hearing Brief, 10/1/15, at 4. Since this claim was not pursued in the written motion, nor raised during the suppression hearing, I would deem the argument waived. **See** Pa.R.Crim.P. 581(D) (motion shall state grounds for suppression); **Commonwealth v. Dixon**, 997 A.2d 368, 376 (Pa.Super. 2010) (en banc) (Commonwealth not required to present testimony regarding how gun was recovered, since appellant only challenged the legality of the seizure, not the manner of seizure).

Regarding waiver, I note that we recently issued an opinion in *Commonwealth v. Carper*, --- A.3d ---, 2017 WL 4562730 (Pa.Super. October 13, 2017), holding that a defendant validly preserved a suppression issue based on an argument raised in a post-hearing brief. The defendant therein was charged with DUI crimes and sought suppression of his blood results based on *Birchfield v. North Dakota*, 136 S.Ct. 2160 (2016), which was decided following his arrest. In the defendant's post-hearing brief, he argued for the first time that, pursuant to Article I, Section 8 of the Pennsylvania Constitution, the warrantless blood draw was not saved by good faith reliance upon the law that existed at the time of the draw. We held that the failure to raise that point of law in the written motion or at the hearing did not result in waiver, observing:

> The requirement that a defendant raise the grounds for suppression in his or her suppression motion ensures that the Commonwealth is put on notice of what evidence it must produce at the suppression hearing in order to satisfy its burden of proving that the evidence was legally obtained. *Cf. Commonwealth v. McDonald*, 881 A.2d 858, 860–861 (Pa. Super. 2005) (internal quotation marks and citation omitted) ("[W]hen a motion to suppress is not specific in asserting the evidence believed to have been unlawfully obtained and/or the basis for the unlawfulness, the defendant cannot complain if the Commonwealth fails to address the legality of the evidence the defendant wishes to contest."). In this case, the Commonwealth extensively addressed the Article I, Section 8 issue in its brief filed prior to the suppression hearing. It also addressed the Article I, Section 8 issue in its argument prior to the beginning of the suppression hearing. At the conclusion of the suppression hearing, the Commonwealth stated that it called a witness in order to prove that Appellee's consent was valid notwithstanding the partially inaccurate DL–26 warnings. This is the only additional evidence that the Commonwealth needed to

offer because of Appellee's Article I, Section 8 claim. Finally, the Commonwealth did not object to Appellee raising a Article I, Section 8 claim before the trial court. Thus, the Commonwealth was not unfairly prejudiced by Appellee's delay in raising his Article I, Section 8 claim.

*Carper*, 2017 WL 4562730 at *4.

*Carper* did not deem the issue waived since the necessary facts were developed at the hearing. The same is not true here, as the evidentiary record does not fully speak to the circumstances of Appellant's encounter with Agent Wolfe. The Commonwealth cannot be blamed for failing to anticipate and rebut Appellant's alternative argument that consent was involuntary. Therefore, Appellant's post-hearing attempt to raise the issue of voluntariness did not preserve the issue for our review.

Next, I briefly address the separate search of the phone. Appellant argues that he did not consent to this separate search; instead, he simply disclosed the password needed to access the phone at Agent Wolfe's request.[3] I agree that the record does not support a finding that Appellant consented to the search of his phone. However, at this point in the interaction, the anonymous tips were corroborated through discovery of the phone, and the possession of the smartphone in itself was a parole

---

[3] Appellant did not allege that the disclosure of the password was compelled or otherwise unlawfully obtained.

violation.[4] I would therefore hold that the limited warrantless search of the phone was justified due to corroboration of the tip, Appellant's prior history, and the need to ensure compliance with parole conditions.

Finally, I address ***Packingham v. North Carolina***, 137 S.Ct. 1730 (2017), wherein the United States Supreme Court held that a North Carolina statute prohibiting sex offenders from accessing social networking websites was unconstitutional. ***Packingham*** involved a First Amendment challenge to a criminal statute that applied to all convicted sex offenders, regardless of whether they were still serving an actual sentence. Language in ***Packingham*** suggests that an automatic flat prohibition on internet access may be unduly restrictive of a sex offender's First Amendment rights, and, in turn, arguably unlawful as-applied to Appellant. However, at least one court has suggested that ***Packingham*** would not prohibit a supervisory condition. ***See United States v. Rock***, 863 F.3d 827 (D.C. Cir. 2017) (declining to find plain error in condition barring sex offender from possessing or using any online service without prior approval; "Rock's condition is imposed as part of his supervised-release sentence, and is not a post-custodial restriction of the sort imposed [in ***Packingham***].").

---

[4] Appellant's fruit of the poisonous tree argument hinges on our agreement that the earlier seizure of the phone was improper. Since I would hold that Appellant consented to the search which resulted in that discovery, I would find that neither the initial search of the phone nor the subsequent search warrant was tainted by any illegality.

Additionally, **Packingham** did not speak to whether more specifically tailored requirements would be permissible in general, and certainly did not address whether such restrictions could be justified based on the specific circumstances of individual sex offenders. Indeed, Justice Alito's concurring opinion, joined by Chief Justice Roberts and Justice Thomas, criticized the breadth of the Court's language.

> While I thus agree with the Court that the particular law at issue in this case violates the First Amendment, I am troubled by the Court's loose rhetoric. After noting that "a street or a park is a quintessential forum for the exercise of First Amendment rights," the Court states that "cyberspace" and "social media in particular" are now "the most important places (in a spatial sense) for the exchange of views." *Ante,* at 1735. The Court declines to explain what this means with respect to free speech law, and the Court holds no more than that the North Carolina law fails the test for content-neutral "time, place, and manner" restrictions. But if the entirety of the internet or even just "social media" sites are the 21st century equivalent of public streets and parks, then States may have little ability to restrict the sites that may be visited by even the most dangerous sex offenders. May a State preclude an adult previously convicted of molesting children from visiting a dating site for teenagers? Or a site where minors communicate with each other about personal problems? The Court should be more attentive to the implications of its rhetoric for, contrary to the Court's suggestion, there are important differences between cyberspace and the physical world.

*Id*. at 1743 (Alito, J., concurring). Therefore, I agree with the Majority that

***Packingham*** does not alter our analysis, and any issue regarding its

application was not preserved for review.[5]

_____

[5] The Majority states that Appellant could challenge the lawfulness of his parole conditions in a PCRA petition filed at the underlying criminal docket. I would refrain from opining on whether the PCRA would or could provide relief pursuant to ***Packingham***, especially insofar as Appellant would presumably be seeking relief from continued obligations due to a change in the law as opposed to challenging the conviction. ***See Commonwealth v. Partee***, 86 A3d 245 (Pa.Super. 2014) (motion to enforce plea agreement does not fall under PCRA).