J-A10013-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| JERMAINE Z. JONES | : | |
| | : | |
| Appellant | : | No. 3020 EDA 2024 |

Appeal from the Judgment of Sentence Entered September 13, 2024
In the Court of Common Pleas of Lehigh County Criminal Division at
No(s): CP-39-CR-0004134-2023

BEFORE: PANELLA, P.J.E., BECK, J., and FORD ELLIOTT, P.J.E.[*]

MEMORANDUM BY PANELLA, P.J.E.:         **FILED MAY 30, 2025**

Jermaine Jones appeals from the judgment of sentence, an aggregate period of 13 to 40 years' incarceration, entered in the Court of Common Pleas of Lehigh County after he was found guilty of possession with intent to deliver ("PWID") a controlled substance,[1] possession of a controlled substance,[2] and possession of drug paraphernalia[3] at a nonjury trial. Jones challenges the trial court's denial of his motion to suppress evidence as well as the sufficiency and weight of the evidence presented at trial. After careful consideration, we

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] 35 P.S. § 780-113(a)(30).

[2] 35 P.S. § 780-113(a)(16).

[3] 35 P.S. § 780-113(a)(32).

reverse the order denying the motion to suppress and vacate the judgment of sentence.

We glean the following facts from the certified record. On May 28, 2023 at 7:42 A.M., the following anonymous tip was submitted to the Allentown Police Department via Lehigh Valley Crime Stoppers:

> I was just able to get free from a house of which [I] was held for the past three hours[.]
>
> I was forced along with another woman to ingest white powder. The other girl started foaming out the mouth and they said they were taking her to a bridge near Hanover to dump her off. I don't know if she's even alive.
>
> Aubrey Arthur convinced us we were just going to hang out with her friend who turned out to be her pimp and a drug man. He made us take stuff for the past hours. I tried calling the hotline and the woman who answered refused my call and hung up. I was told by Aubrey and Tru [I] would be killed if I called anyone.
>
> I'm scared and don't know what they did with the other girl. I'm out the house and safe now but not without being raped and forced to take drugs. Please find the other girl.

Commonwealth Exhibit 1, 4/29/24, at 1 (formatting altered). The tipster indicated the incident occurred at 711 S 5th Street, Allentown, Pa, and further alleged the suspect uses and sells drugs, specifically fentanyl, from the home and, "[w]hile we were there the Aubrey girl[']s boyfriend pulled out what looked to be a semi[-]automatic machine gun[.] Something I've never seen before[.]" *Id.* Additionally, the tipster alleged "[t]he Aubrey girl said we didn't make Tru enough money then she said Jermaine is upset with us [for] not producing with our vaginas [overnight.]" *Id.* at 2.

On the morning of May 30, 2023, Pennsylvania State Parole Agent Jacqueline Vaughn and Supervising Agent Amy Cole received the tip via email from the Allentown Police Department. Agent Vaughn, who had been supervising Jones for approximately one year on a prior PWID conviction, recognized the address of the alleged incident as Jones's parole-approved address. Pursuant to the terms and conditions of his parole, Jones was prohibited from using or possessing controlled substances and owning or possessing a firearm. *See* Commonwealth Exhibit 2, Conditions Governing Parole, 5/5/22. Agent Vaughn and Supervising Agent Cole discussed the anonymous tip and obtained approval to search Jones's residence. When Agent Vaughn contacted Jones, directing him to report to the parole office, she learned that he was in Maryland, even though he had not informed her of his travel plans or received pre-approval to travel.

When Jones reported to the parole office that same day at approximately 4:45 P.M., he was immediately placed in handcuffs and detained pending the outcome of the investigation. After the search of Jones's person and vehicle did not yield any contraband, the agents proceeded to Jones's residence and used his keys to enter through the front door, while Jones remained in a vehicle with an agent. After securing the first floor, agents discovered a woman in the basement of the residence and a teenage boy on the second floor. Agents contacted the boy's mother and waited for her arrival. Once she arrived and the boy was removed, agents commenced their search.

In a second-floor bedroom, the agents discovered drug paraphernalia, which amounted to a technical violation of parole, and therefore, they continued their search. However, after observing a container of white powder in the living room and additional suspected controlled substances in a nearby backpack, agents ceased their search and contacted the Allentown Police Department.

Detective Michael Hammer of the Allentown Police Department applied for a warrant to search 711 S 5th Street, which was granted and executed shortly thereafter. If called to testify, Detective Hammer would have stated that the search yielded the following: 6 bags of green vegetable matter, drug packaging material, 3 digital scales, and 2 bags of white powder located in the first-floor front room closet; 1 bag of green vegetable matter located on a desk in the first-floor living room; 2 bags of white powder, 1 pill bottle with unknown pills, 1 bag of green vegetable matter, 1 jar of green vegetable matter, and additional drug packaging material located on a computer desk in the first-floor front room; 2 bags of unknown pills, 1 bottle of cutting agent, 1 digital scale, and drug packaging material found inside a black backpack in the first-floor front room in close proximity to the computer desk; 2 clear pound-sized bags of green vegetable matter found in a third-floor bedroom; and 2 bags of unknown pills found in dresser drawers in the third-floor bedroom, along with identifying documents, including Jones's social security

card and a wallet containing his identification. **See** Stipulation of Facts, 8/7/24, at 2-3.

On December 28, 2023, Forensic Scientist Adam Shober issued an expert report in which he reached the following conclusions regarding the contents of the seized items: 3 plastic bags of a white powder substance weighing 27.24 grams contained cocaine; a bag of 249 pills and 1 bag of white powder weighing 70.05 grams contained methamphetamine; and 11 bags of green vegetable material weighing 87.46 grams contained marijuana. **Id.** at 3-4.

A Criminal Information was filed against Jones on January 12, 2024, charging him with Count 1: Manufacture, Delivery, or Possession With Intent to Manufacture or Deliver in violation of 35 P.S. § 780-113, §§ A30 (Fentanyl); Count 2: Manufacture, Delivery, or Possession With Intent to Manufacture or Deliver in violation of 35 P.S. § 780-113, §§ A30 (Cocaine); Count 3: Intentional Possession of a Controlled Substance by a Person Not Registered in violation of 35 P.S. § 780-113, §§ A16 (Fentanyl); Count 4: Possession of a Small Amount of Marijuana for Personal Use in violation of 35 P.S. § 780-113, §§ A31(i); and Count 5: The Use or Possession of Drug Paraphernalia in violation of 35 P.S. § 780-113, §§ A32.

On March 21, 2024, Jones filed an omnibus pre-trial motion seeking to suppress the physical evidence obtained from his residence. On April 29, 2024, an evidentiary hearing was held on the motion at which Agent Vaughn and

Supervising Agent Cole testified to the circumstances prompting their search. The court denied the motion on June 5, 2024, upon finding that:

1.   Supervising Agent Cole had reasonable suspicion of criminal activity or a violation of parole when the agents entered and searched Jones's residence;

2.   The search did not violate Jones's Fourth Amendment rights under the United States Constitution or Article I, § 8 rights pursuant to the Pennsylvania Constitution; and

3.   The items seized from Jones's residence were lawfully obtained, not the product of illegal police conduct, and should not be suppressed.

*See* Suppression Court Opinion, 6/5/24, at 5.

A nonjury trial was held on August 7, 2024, at which a stipulation of facts as well as the testimony and exhibits presented at the pre-trial motion hearing were incorporated into the record. Jones was found guilty of two counts of PWID, possession of a controlled substance, and possession of drug paraphernalia. On September 13, 2024, Jones was sentenced to an aggregate period of 13 to 40 years' imprisonment in a state correctional facility. On the counts of PWID methamphetamine and cocaine, the court imposed consecutive sentences of 8 to 20 years and 5 to 20 years, respectively, to run concurrent to the sentences imposed on the counts of possession of marijuana and possession of drug paraphernalia.

On September 20, 2024, Jones filed a post-sentence motion, which contained a motion for a new trial challenging the weight of the evidence, a motion for judgment of acquittal challenging the sufficiency of the evidence,

J-A10013-25

and a motion to modify sentence. On October 17, 2024, the trial court denied Jones's post-sentence motions without a hearing.

Jones filed a notice of appeal and a court-ordered concise statement of errors complained of on appeal, pursuant to Pa.R.A.P. 1925(b), on November 12 and November 25, 2024, respectively. In response, the trial court filed its opinion, pursuant to Pa.R.A.P. 1925(a), on December 5, 2024, incorporating its opinions dated June 5, 2024 and October 16, 2024.

On appeal, Jones raises the following questions for our review:

I. Did the Lower Court commit an error of law when it denied Appellant's motion to suppress the evidence obtained as a result of the warrantless search of Appellant's residence conducted by state parole officers without Appellant's consent in violation of rights granted him by Amendment XIV of the United States Constitution and Article I, Section 8 of the Constitution of the Commonwealth of Pennsylvania where the basis for that search, an anonymous tip on an internet tip line, did not provide sufficient information to form a reasonable suspicion that contraband would be found therein?

II. Was the evidence presented at trial insufficient to support the verdict of guilt beyond a reasonable doubt because the Appellant was convicted of multiple drug possession offenses where the evidence did not prove beyond a reasonable doubt that he had constructive possession of the drugs?

III. In its acceptance at face value the allegation made in the anonymous tip that Appellant was selling drugs at his residence did the Lower Court unreasonably give that claim more evidentiary weight than it was due?

Appellant's Brief, at 6-7 (formatting altered; suggested answers omitted).

First, Jones challenges the suppression court's denial of his motion to suppress physical evidence.

- 7 -

An appellate court's standard of review in addressing a challenge to the denial of a suppression motion is limited to determining whether the suppression court's factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. Because the Commonwealth prevailed before the suppression court, we may consider only the evidence of the Commonwealth and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the suppression court's factual findings are supported by the record, the appellate court is bound by those findings and may only reverse if the court's legal conclusions are erroneous. Where the appeal of the determination of the suppression court turns on allegations of legal error, the suppression court's legal conclusions are not binding on an appellate court, whose duty is to determine if the suppression court properly applied the law to the facts. Thus, the conclusions of law of the courts below are subject to plenary review.

*Commonwealth v. Snowden*, 330 A.3d 422, 427 (Pa. Super. 2025) (*en banc*) (brackets, footnote, and citation omitted).

Jones avers the warrantless search of his residence was not supported by reasonable suspicion because it "was prompted by an anonymous tip which did not contain sufficient information that could be investigated and verified," and "parole agents made no attempt to corroborate the information contained in the tip." Appellant's Brief, at 16.

Conversely, the Commonwealth maintains the information provided in the tip was sufficiently reliable to establish reasonable suspicion to search Jones's residence "[b]ecause the anonymous tip aligned with [his] parole plan address, his name, and alleged that [he] had a white powder substance which the complainant was allegedly forced to ingest[.]" Appellee's Brief, at 17.

Pursuant to both our federal and state constitutions, parole officers are generally prohibited from searching a residence absent a warrant supported by probable cause. **See** U.S. Const. amend. IV; Pa. Const. art I, § 8. However, "[a] parolee has limited Fourth Amendment rights because of a diminished expectation of privacy." **Commonwealth v. McClellan**, 178 A.3d 874, 881 (Pa. Super. 2018) (citing **Commonwealth v. Williams**, 692 A.2d 1031, 1035 (Pa. 1997)). A "parolee's signing of a parole agreement giving his parole officer permission to conduct a warrantless search does not mean either that the parole officer can conduct a search at any time and for any reason or that the parolee relinquishes his Fourth Amendment right to be free from unreasonable searches." **Williams**, at 692 A.2d 1036. In 2016, our Pennsylvania Supreme Court, per Chief Justice Debra Todd (then Justice Todd) looked back at its decision in **Williams** and stated:

> [O]ur cases reveal that, while probationers and parolees have "a more narrowly protected privacy interest" than an individual not on probation or parole, **Williams**, 692 A.2d at 1036, they nonetheless have a protected privacy interest, and searches of probationers and parolees must be "reasonable." **Id.** at 1035.

**Commonwealth v. Arter**, 151 A.3d 149, 161 (Pa. 2016).

Accordingly, a state parole agent may conduct a search of a parolee's property if "there is reasonable suspicion to believe that the department-supervised offender possesses contraband or other evidence of violations of the conditions of supervision." 61 Pa.C.S.A. § 6182(d)(2). Furthermore, a state parole agent, when supervising a county offender, "may search the []

property of offenders … if there is a reasonable suspicion to believe that the offender possesses contraband or other evidence of violations of the conditions of supervision[.]" 42 Pa.C.S.A. § 9912(b), (d)(1)(i). "The existence of reasonable suspicion to search shall be determined in accordance with constitutional search and seizure provisions as applied by judicial decision." 61 Pa.C.S.A. § 6182(d)(4). The following factors may be considered:

(i)  The observations of agents.

(ii)  Information provided by others.

(iii)  The activities of the department-supervised offender.

(iv)  Information provided by the department-supervised offender.

(v)  The experience of the agents with the department-supervised offender.

(vi)  The experience of agents in similar circumstances.

(vii)  The prior criminal and supervisory history of the department-supervised offender.

(viii)  The need to verify compliance with the conditions of supervision.

*Id.*

In establishing reasonable suspicion, the fundamental inquiry is an objective one, namely, whether the facts available to the officer at the moment of intrusion warrant a person of reasonable caution in the belief that the action taken was appropriate. This assessment, like that applicable to the determination of probable cause, requires an evaluation of the totality of the circumstances, with a lesser showing needed to demonstrate reasonable suspicion in terms of both quantity or content and reliability.

*Commonwealth v. Kuhlman*, 300 A.3d 460, 467 (Pa. Super. 2023) (brackets and citation omitted).

To properly base a finding of reasonable suspicion on third-party information, a parole agent must (1) determine whether the source is reliable and (2) independently corroborate the information. *See Williams*, 692 A.2d at 1037 (holding agent had reasonable suspicion to search parolee's residence after receiving tip from reliable confidential informant that parolee was selling drugs and independently corroborating tip with local police); *see also Commonwealth v. Coleman*, 130 A.3d 38, 46-47 (Pa. Super. 2015) ("[F]or an anonymous tip to give rise to reasonable suspicion of criminal activity, it must be of sufficient quality that it may be found reliable."); *In re J.E.*, 907 A.2d 1114, 1120 (Pa. Super. 2006) ("[An anonymous] tip must be sufficiently corroborated by independent police work to demonstrate that the tip was correct.") (citations omitted).

The Pennsylvania Supreme Court has concluded that an anonymous tip alone is unreliable and "insufficient to establish a reasonable suspicion of criminal activity." *Commonwealth v. Wimbush*, 750 A.2d 807, 811 (Pa. 2000) (citations omitted). In order for an anonymous tip to give rise to a reasonable suspicion that a parole violation has occurred, it must be of sufficient quality that it may be found reliable. *Coleman*, *supra* at 47. To be of sufficient quality, an anonymous tip must provide "something more"—an independent reason to believe that a suspect is involved in criminal activity,

- 11 -

such as inside information—a specific familiarity with the suspect's affairs, including "future actions of third persons ordinarily not easily predicted." *Wimbush*, *supra* at 812. In other words, there must be corroboration of criminal activity, or "corroboration of predictive aspects of the [anonymous] tip." *Id.* at 813.

There have been occasions where courts have found anonymous tips to support reasonable suspicion, including *Alabama v. White*, 496 U.S. 325, 331-32 (1990), where police *corroborated* the tip's highly detailed inside information about the suspect's not-easily-predicted future actions, including the specific time the suspect would eventually leave a specific apartment in a specific vehicle and travel to a specific motel with cocaine. Moreover, in *Commonwealth v. Sperber*, 177 A.3d 212, 215-16 (Pa. Super. 2017), an anonymous tip was *corroborated* with reports of similar information from named informants, and thus, the Court concluded that the tip did not need to provide predictive information.

Our appellate courts have found anonymous tips unreliable where the tip is lacking corroboration that criminal activity is or will be afoot. For example, in *Wimbush*, the Supreme Court concluded an anonymous tip that a man named "Tony" possessed drugs and was driving a white van with a specific license plate on a certain road did not give rise to a reasonable suspicion of criminal activity even though a police check of the license plate number revealed a van registered to "Anthony." *See Wimbush*, 750 A.2d at

809. The Court distinguished the case from **Alabama v. White**, explaining that the tip in **Wimbush** provided facts existing at the time of the call, not inside information of the suspect's future actions. **See id.** at 813-14.

Similarly, in **Commonwealth v. White**,[4] our Supreme Court held that an anonymous tip about possible drug activity at a specific residence which included a description of the suspect as a black male wearing a white shirt and shorts riding a girl's black bicycle, did not give rise to a reasonable suspicion because the tip did not provide insider information related to the criminal activity. **See id.** at 810, 812-13.

In **Coleman**, this Court held that an anonymous tip that the appellant was one of the largest drug sellers in the area and had a driving suspension, the latter detail having been verified, was unreliable because the tip did not specifically articulate facts that the appellant was engaged in criminal activity. **See Coleman**, 130 A.3d at 46-47.

As noted above, Jones was subject to supervision for a prior PWID offense, and the terms and conditions of his parole included abstaining from using or possessing controlled substances or owning or possessing a firearm. **See** Commonwealth Exhibit 2, Conditions Governing Parole, 5/5/22. Here, the agents did not gain entry to Jones's residence with his consent or by

---

[4] The Pennsylvania Supreme Court consolidated the two cases, **Commonwealth v. White** and **Commonwealth v. Wimbush**, in a single opinion.

conducting a scheduled visit. ***See Commonwealth v. Smith***, 85 A.3d 530, 537 (Pa. Super. 2014) (finding parolee was not subjected to a search where agents detected odor of marijuana emanating from basement while conducting a scheduled home visit in furtherance of their supervisory duty). Rather, both Supervising Agent Cole and Agent Vaughn testified that, based on the information contained in the anonymous tip, the agents were searching for parole violations. ***See*** N.T. Suppression Hearing, 9/30/24, at 27, 48. When questioned about her determination that reasonable suspicion existed on cross-examination, Supervising Agent Cole testified as follows:

Q      And when you received this tip, this series of messages, is this all that you would have received?

A      This was an attachment to an e-mail.

Q      Okay. And upon receiving this tip, what, if any, attempts at corroborating this evidence did you make?

A      Corroborating what evidence? This is just suspicion for us to do a search for parole violations.

Q      Right. And you made the decision to perform this search of Mr. Jones' person, car and home, correct? You made that call?

A      Yes.

Q      Based solely on this -- the information that's in this anonymous tip that's been offered as an exhibit?

A      The very specific information in this anonymous tip that has been offered as this exhibit, yes.

Q      And who made [the Crime Stoppers] report?

*** *

- 14 -

A    I don't know.

Q    You have no idea who this person is?

A    I have no idea.

Q    You don't know if it's a man or a woman, right?

A    I would assume it's a female based on what they were stating. But I don't factually know who made it.

N.T. Suppression Hearing, 9/30/24, at 27-28. Similarly, when Agent Vaughn was asked why she considered the information in the tip credible, she responded, "[b]ecause it had [Jones's] parole address and his name in it." Agent Vaughn further indicated she had no independent corroboration that criminal activity had taken place at that time. *Id.* at 49.

The suppression court explained its finding of reasonable suspicion as follows:

In light of the information provided in the tip with regard to the drugs and firearm and the discussion with Agent Vaughn, as well as having the knowledge that [Jones] was on parole for a conviction of [PWID] a Controlled Substance, Supervising Agent Cole made the decision to search [Jones's] residence to confirm that [he] was complying with the terms [and] conditions of parole. In particular, the terms and conditions of [Jones's] parole included abstaining from the unlawful possession or use of controlled substances and refraining from possessing or owning any firearms. Based on the foregoing, [the suppression court] concludes that reasonable suspicion existed for [Supervising Agent Cole] to search [Jones's] residence for evidence of contraband in violation of the terms and conditions of his parole. *See Alabama v. White*, 496 U.S. 325, 327 (1990) (recognizing that anonymous tips can have "sufficient indicia of reliability" to establish reasonable suspicion).

Suppression Court Opinion, 6/5/24, at 9. We are constrained to disagree.

- 15 -

The anonymous tip in this matter cannot be found to be of sufficient quality to give rise to reasonable suspicion, where agents neither identified, contacted, or interviewed the anonymous source nor independently corroborated any of the source's allegations. *See Williams*, 692 A.2d at 1037. Here, the agents had no basis independent of the information provided in the uncorroborated anonymous tip to suspect Jones was violating the terms and conditions of his parole. Contrary to the Commonwealth's assertions, the fact that the tip contained Jones's parole-approved address and first name or that Jones was on parole for a prior PWID offense has no bearing on the reliability of the anonymous source or the information the source provided. While "[w]e acknowledge that parole agents are not police officers and do not have the same ability to conduct surveillance or confirm information received by a tipster[,]" they nonetheless remain bound by the constitutional search and seizure provisions of the Fourth Amendment and Article I, § 8. *Coleman*, 130 A.3d at 47.

Therefore, in our review of the suppression hearing record, we cannot find support for the trial court's conclusion that the totality of the circumstances demonstrated the parole agents had reasonable suspicion that evidence of contraband or a violation of parole would be discovered in Jones's residence to justify their warrantless entry and search. Accordingly, we are constrained to reverse the trial court order denying Jones's motion to suppress.

In his second and third issues, Jones challenges the sufficiency and weight of the evidence. Jones's convictions of PWID, possession of a controlled substance, and possession of drug paraphernalia relied upon the evidence illegally seized from his residence, and therefore, cannot be sustained. Accordingly, in addition to reversing the suppression order, we are required to vacate the judgment of sentence, and remand for further proceedings consistent with this decision.

Suppression order reversed. Judgment of sentence vacated. Case remanded. Jurisdiction relinquished.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 5/30/2025